240 N.J. Super. 181 (1990)
572 A.2d 1187
MICHAEL J. LALLY, PLAINTIFF-APPELLANT,
v.
PRINTING MACHINERY SALES AND SERVICE CO., INC., DEFENDANT-RESPONDENT, AND ROCKWELL GRAPHIC SYSTEMS, INC., MIEHLE PRINTING PRESS AND MANUFACTURING CO., SMITH-LUSTIG PAPER BOX COMPANY, JOE DALE, JOHN SMITH, (A FICTITIOUS NAME AS DISTRIBUTOR, RETAILER AND/OR INSTALLER), P. BOYLE, JAMES JONES, (FICTITIOUS NAME AS CONTRACTOR), JAMES DOE, (FICTITIOUS NAME AS MAINTENANCE, REPAIR AND/OR SERVICE COMPANY), AND INSURANCE COMPANY OF NORTH AMERICA, I/J/S/A,[1] DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1990.
Decided April 20, 1990.
*183 Before Judges DREIER, SCALERA and D'ANNUNZIO.
Laurence P. Bafundo argued the cause for appellant (Friedman, Bafundo, Ginsberg & Porter, attorneys; Laurence P. Bafundo, on the brief).
Raymond R. Chance, III argued the cause for respondent (Horn, Kaplan, Goldberg, Gorny & Daniels, attorneys; L. Patricia Sampoli, on the brief).
The opinion of the Court was delivered by DREIER, J.A.D.
Plaintiff, Michael J. Lally, appeals from the dismissal of his claim against defendant Printing Machinery Sales & Service Co. Inc. (Printing Machinery), the supplier and installer of a steel jacket placed around a roller on a die-cutting press. Plaintiff was injured on February 14, 1984 when his hand was caught and crushed between the pressure roller and the flat bed.[2] The basic machinery had been a portion of a press manufactured in 1915. The case before us involves only the claim against *184 defendant Printing Machinery. All claims against the original manufacturer and others have been settled.
The press was purchased in 1977 by plaintiff's employer, K & K Plastics of Camden, New Jersey. Shortly thereafter, K & K contracted with defendant to work on the press, since the metal jacket to which the cutting dies were affixed was not in working order and needed replacement. Defendant specializes in the repair, maintenance and refurbishing of such old equipment. When defendant performed its function of replacing the metal jacket, there was no nip-point guard preventing an employee's hand from being drawn between the rotating metal jacket and moving horizontal plate. Defendant neither supplied such a guard nor warned of the danger of operating the machine without a guard in place. Plaintiff contends that without the jacket the roller would not have operated and the machine was effectively useless. By replacing the jacket on the roller, defendant restored the machine to an operating condition. Defendant asserts that the replacement of the jacket was no more than routine maintenance, and such minor reconditioning should not engender responsibility to provide safety devices or to warn against their absence.
This case emphasizes the distinction between duties imposed upon a manufacturer or rebuilder of machines and those who only repair or maintain them. A manufacturer must provide effective and available safety devices or adequate warnings, and cannot delegate this duty to a down-stream purchaser. See Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 394, 451 A.2d 179 (1982); Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150, 406 A.2d 140 (1979); Cepeda v. Cumberland Engineering Co., Inc., 76 N.J. 152, 386 A.2d 816 (1978); Bexiga v. Havir Mfg. Corp., 60 N.J. 402, 290 A.2d 281 (1972). Furthermore, after the sale of the machine, a manufacturer has a continuing duty to provide such devices. Stephenson v. R.A. *185 Jones & Co., Inc., 103 N.J. 194, 200, 510 A.2d 1161 (1986). Even if the danger was not recognized or recognizable at the time the machine was manufactured, if the manufacturer later learns of the danger, it must "take reasonable steps to notify purchasers and consumers of the newly-discovered danger." Feldman v. Lederle Labs., 97 N.J. 429, 456-457, 479 A.2d 374 (1984).[3]
A duty similar to that of the manufacturer has been imposed upon a rebuilder of a machine or a component part. In Michalko, after stating the general rules governing a manufacturer's liability for the failure to provide a safety guard or appropriate warnings, the Supreme Court extended the duty to rebuilders of machinery:
These principles apply with similar force to one engaged in rebuilding machines or manufacturing component parts. Under these principles, when it is feasible for the rebuilder of machinery or the manufacturer of component parts to incorporate a safety device and it fails to do so, the rebuilt machine or component part will be deemed to be a defective product when delivered by the manufacturer to its owner. Further, the fact that the product was built according to the plans and specifications of the owner does not constitute a defense to a claim based on strict liability for the manufacture of a defective product when the injuries are suffered by an innocent foreseeable user of the product. [91 N.J. at 395, 451 A.2d 179].
In Michalko, defendant Cubby Manufacturing Company urged that it was hired to rebuild a part of the press to the owner's specifications, and that it never exerted enough control over the product to be legally responsible for plaintiff's injuries. This argument was specifically rejected. 91 N.J. at 395-396, 451 A.2d 179. The fact that Cubby did not sell the machine to plaintiff's employer was also held to be irrelevant.

*186 We have imposed strict liability in situations involving a combination of sales and services.... Moreover, we have clearly rejected the requirement that a technical sale occur before strict liability will be imposed ... [t]hus, defendant's argument that strict liability cannot be applied in the absence of a `sale' is unavailing. [Id. at 401, 451 A.2d 179; citations omitted].
Lastly, the Court in Michalko determined that where a safety device cannot be installed because of further processing of the product which would render the installation of the device premature, the manufacturer or rebuilder still has the duty to warn of the dangers of operating the machine without the protective device. Id. at 402-403, 451 A.2d 179. If the device should have been installed, however, a warning is insufficient and the manufacturer must see that the device itself is installed. Stephenson v. R.A. Jones & Co. Inc., supra, 103 N.J. at 200, 510 A.2d 1161.
But, where a claim is made against other than a manufacturer or rebuilder, even though there may be some duty to inspect the machine, no liability is imposed for the failure to provide a safety device or warn the user. Cf. Jackson v. N.J. Manufacturers Ins. Co., supra, 166 N.J. Super. at 456-460, 400 A.2d 81 (involving a subsidiary claim in that case against an insurer who inspected the premises and against whom plaintiff claimed a duty to have warned about the dangerous condition). Thus, if a defendant is merely engaged to maintain or to service a machine, the broad protective duties announced in Michalko will not be imposed, even though the servicer by its actions permits the machine again to be functional. In such a case, liability may be imposed only if the service itself is negligently performed, the parts provided are themselves defective, or another basis for liability exists. See Realmuto v. Straub Motors, 65 N.J. 336, 344-345, 322 A.2d 440 (1974) (where liability was imposed because the rebuilder of the carburetor was also the seller of the vehicle). It would be highly unfair if *187 an auto mechanic who changes a flat tire, thus enabling an incapacitated automobile to be used, becomes responsible for warning of the lack of all safety devices relating to the wheel on which he was working, or even to the car as a whole.
In the case before us it is urged that the replacing of the jacket was not merely maintenance, but actually was a rebuilding of the machine. If plaintiff had any evidence of this, it should have been presented in the form of a certification, extract from a deposition, or the like at the time of the summary judgment motion.[4]R. 4:46-2. The operation of the machine apparently was beyond the experience of the ordinary juror. The plaintiff's expert report submitted to the trial judge, in describing the replacement of the jacket, stated:
Since the press was purchased, K & K made two modifications to the press. First, in June 1977, the outer jacket of the pressure cylinder was replaced, which was routine maintenance. [Emphasis supplied].
(The second modification was a 1980 addition of guards over the drive belts and flywheel of the machine, and the addition of a barrier guard adjacent to where an operator would stand). Thus, even plaintiff's expert described the replacement of the jacket as "routine maintenance." Given this characterization, there was no evidence, expert or lay, which would have supported a determination that the replacement of this jacket was in effect a rebuilding or complete reconditioning of the machine in the sense indicated by Michalko. The trial judge therefore correctly determined that defendant Printing Machinery could not be liable for plaintiff's injuries.
Affirmed.
NOTES
[1] We are informed by counsel that this abbreviation stands for "individually, jointly, severally or in the alternative."
[2] As the roller pressed the jacket (to which the cutting die was affixed) against a flat plate or bed, the roller and jacket turned as the plate containing the cardboard material to be cut moved under the cutting die. The finished product would then be removed, and the process repeated.
[3] But see Jackson v. N.J. Manufacturers Ins. Co., 166 N.J. Super. 448, 464-465, 400 A.2d 81 (App.Div. 1979), certif. den. 81 N.J. 330, 407 A.2d 1204 (1979) (a pre-Feldman case where the post-sale warning duty was rejected), and Bottignoli v. Ariens Co., 234 N.J. Super. 353, 560 A.2d 1261 (App.Div. 1989) (where Jackson was followed, notwithstanding the contrary intervening statements by the Supreme Court in Stephenson and Feldman).
[4] Plaintiff's efforts at proof had been particularly directed at the manufacturer and its successors.