287 N.J. Super. 423 (1996)
671 A.2d 189
RICHARD AND ANN MORT, PLAINTIFFS-RESPONDENTS/CROSS-APPELLANTS,
v.
BESSER COMPANY, DEFENDANT-APPELLANT, AND AKRON BRICK & BLOCK CO., INC.; STANDLEY BATCH SYSTEMS, INC.; PURCHASE ENGINEERING; A. SURF ELECTRIC COMPANY, INC.; ANCHOR CONCRETE PRODUCTS, INC. (IN AID OF DISCOVERY), AND JOHN DOE I, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1995.
Decided February 20, 1996.
*424 Before KEEFE, WEFING and RODRIGUEZ, JJ.
*425 Keith G. Von Glahn argued the cause for appellant (Wilson, Elser, Moskowitz, Edelman & Dicker, attorneys; Mr. Von Glahn, of counsel; John F. Tratnyek, on the brief).
David J. Ades argued the cause for respondents/cross-appellants.
The opinion of the court was delivered by KEEFE, J.A.D.
Defendant Besser Company (Besser) appeals from the entry of judgment against it arising out of this product liability action. Besser contends on appeal that the verdict of the jury on liability is fatally inconsistent or against the weight of the evidence, and that plaintiffs failed to prove that the product was defective while in its control. Plaintiffs Richard and Ann Mort cross-appeal. They contend that there was no evidence before the jury concerning the liability of two settling defendants and that the percentage of fault assessed against those settling defendants must be vacated.
We disagree with Besser's contentions and deny its appeal. However, we agree with plaintiffs' contention that two of the settling defendants' liability should not have been submitted to the jury. Accordingly, we affirm the judgment in favor of plaintiffs and mold the verdict to reflect the correct allocation of fault as between the culpable defendants.
Plaintiff Richard Mort was employed by Anchor Concrete Products Inc. (Anchor), a concrete block manufacturing company. One of his duties included cleaning large, stationary cement mixers. He performed that function by climbing into the mixer through a hatch and then using an air chisel to clean the walls of the mixer chamber.
On October 15, 1987, Mort climbed into a cement mixer to clean it. While inside the chamber, a co-employee activated the mixer's access door. In doing so, the door closed on Mort's right hand causing considerable damage to four fingers.
*426 The subject mixer was custom-manufactured by Besser for Stregley Building Supply Company (Stregley) in 1974. In 1982 or 1983, Stregley sold the mixer to Akron Brick & Block Co., Inc. (Akron). In 1986, the mixer was sold in an inoperable condition to Anchor. In order to make it operable, an electrical panel had to be designed, manufactured and wired to the mixer. Anchor intended to operate the Besser mixer along with two other mixers at the Anchor plant and engaged Standley Batch Systems, Inc. (Standley), to design and fabricate an integrated system so that all three mixers could be run from the same control panel. Standley in turn engaged Purchase Engineering (Purchase) to design and manufacture the control panel. Purchase designed the control panel system in accord with plans and specifications approved by Standley. It then sold the control system to Standley who in turn made it a part of the package sold to Anchor. The control panel was installed by A. Surf Electric Co., Inc. (Surf).
The door on the mixer through which Mort gained access for the purpose of cleaning the mixer was connected to the control panel. Switches on the control panel electrically activated solenoids on the mixer to operate the opening and closing of the access door with the use of air pressure. There was a manual shutoff valve at each mixer to cut off the air flow to the solenoids. However, if the manual shutoff was not used and the air was left on, the access door could be opened and closed from the control panel by electrically turning on and off the air valve.
Mort claimed that he was never instructed on how to use the manual shutoff valve. A co-employee also stated that he was never instructed to turn off the manual air valve when he cleaned the mixers. On the date of Mort's accident, the manual shutoff valve was not used when Mort opened the access door and entered the mixer. Consequently, a co-employee, not knowing Mort was inside the chamber, activated the door mechanism from the control panel causing Mort's injury.
Plaintiffs instituted suit against Besser, Akron, Standley Purchase and Surf. Akron obtained summary judgment on the *427 ground that it was not subject to strict liability because its sale of the mixer to Anchor was a "casual sale." See Santiago v. E.W. Bliss Div., Gulf and Western Mfg. Co., 201 N.J. Super. 205, 216-217, 492 A.2d 1089 (App.Div. 1985) (holding that an occasional seller of equipment should not be subject to strict liability). Plaintiffs settled with Standley and Surf before trial.
At trial, plaintiffs' expert, Bruce Crowly, testified that a limit or interlock switch should have been installed on the door, either as a part of its original design, or when Purchase designed the control mechanism for the Anchor plant. Such a device would have sensed the position of the access door and would not have allowed it to close. He said that such a mechanism costs less than $100 and would not have impaired the normal function of the mixer. Crowly also opined that Surf was not a substantial factor in causing Mort's accident. As to Standley, he stated that it was not involved in the design of the mixer or any of its control circuitry.
Besser's liability expert, George Koren, testified that the absence of the limit switch was not a design defect. Such a device is not warranted, in his view, because it would be a secondary protective device and would allow the employee a choice between the manual shutoff  the primary safety device and a secondary device. An employee should not be given such a choice. He further opined that limit switches should not be used on mixers because the vibrations would cause frequent switch failures. Koren offered no opinion regarding the work of Standley or Surf.
Purchase's expert, Richard Magee, testified that a designer, such as Purchase, should not modify or alter a piece of equipment designed by another manufacturer. He opined that the safety lock Purchase designed for the entire control system was sufficient. Magee offered no opinion as to either Standley or Surf.
The jury returned a verdict finding Besser 25% liable on a strict liability theory, Purchase 35% liable on a negligence theory (but not on a strict liability theory which was the subject of a separate question), Standley 30% liable, and Surf 10% liable. It awarded Mort $773,000 in damages and his wife $144,000 on her per quod *428 claim. The jury verdict was subsequently molded to reflect appropriate credits to Besser and Purchase in light of the settlement with Surf and Standley.
When Besser's and Purchase's post-trial motions were denied, they filed this appeal, and plaintiffs filed a cross-appeal. Purchase settled with plaintiffs during the pendency of the appeal. Thus, Besser remains as the sole appellant.

I
Besser argues that the jury verdict as to Purchase was inconsistent because the jury found that the control panel it designed was not defective in answer to one interrogatory but that Purchase was nonetheless negligent in respect of its duty to Anchor and plaintiff in answer to another interrogatory. Consequently, Besser contends that the jury's confusion impacted on Besser's liability as well and, thus, the verdict entered against it must be vacated and the matter remanded for a new trial.
Plaintiffs advanced two theories of liability against Purchase through the testimony of their expert, Crowley. The strict liability theory focused on Purchase's design of the control panel based upon information it obtained from Standley, and Purchase's design decisions at the time of manufacture but before the control panel was actually installed at the Anchor plant. The negligence theory focused on Charles Wooley's (Purchase's designer) three day visit to the Anchor plant after the installation by Surf. In that respect, plaintiff maintained that Wooley was negligent in failing to observe the cleaning operation, understand how the control panel design impacted on the safety of that operation, and correct the control circuitry to eradicate the danger.
The trial judge's instructions to the jury distinguished between the two theories and the reason for the separate interrogatories regarding Purchase. We find no indication in the record that Besser objected to this bifurcated approach to Purchase's liability. The only defense objection was raised by Purchase. It questioned whether it had a duty arising from the three day post-installation *429 visit to do something with respect to the safety hazard posed by the cleaning process, and the application of Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 451 A.2d 179 (1982), to these facts.
Neither Besser nor Purchase contended that the jury was being asked to focus on the same conduct in both questions, as Besser now argues, or that a "no" vote on the strict liability question would render the negligence question moot. Therefore, we treat the issue presented by Besser as plain error. That is, if there was error, the error must have been "clearly capable of producing an unjust result." R. 2:10-2. The rule is "sparingly employed" in civil cases. Gaido v. Weiser, 115 N.J. 310, 311, 558 A.2d 845 (1989) (quoting Ford v. Reichert, 23 N.J. 429, 435, 129 A.2d 439 (1957)).
Assuming that the verdict was inconsistent, Besser fails to articulate in its brief how an inconsistent verdict as to Purchase impacts on the jury verdict as to it. Nonetheless, we find that there was no inconsistency in the verdict. As we pointed out earlier, the interrogatories concerning Purchase addressed separate phases of Purchase's involvement with the control panel. On this record, a jury could well have found that the design and manufacture of the control panel was not initially defective based upon the information Purchase had at the time. Yet a jury also could have found that Wooley's subsequent visit to the Anchor plant should have sufficiently informed him of the dangers inherent in the application of the design to the actual use of the mixer and that a design change should have been made.
In this type of case where a contractor is engaged to design and install the electrical connections that enable another's product to function, "there is a fine line separating the designations of a seller or manufacturer as opposed to a supplier of a service." Ramos v. Silent Hoist and Crane Co., 256 N.J. Super. 467, 473, 607 A.2d 667 (App.Div. 1992). Although the record is not clear on the subject, it appears that the trial judge and plaintiff viewed Purchase's involvement as a seller/manufacturer in respect of the *430 design of the control panel before it was delivered and installed by Surf, but as a supplier of a service with respect to Wooley's subsequent visit to the premises.
Whether we agree with that analysis is of no moment. As we pointed out in Ramos, supra, in design defect cases such as this, there is very little difference between a strict liability action and a negligence action, and, thus, the label that we affix to the defendant's conduct is often of no importance. Id. at 477-78, 607 A.2d 667. Whether we say that Purchase was negligent in failing to appreciate how its design would impact on the safe maintenance of the mixer, or that Purchase's failure to consider that factor in its design of the control system resulted in a defective product, is to say the same thing in the context of this case. Perhaps the plaintiff and trial judge were wrong in bifurcating the analysis of Purchase's involvement, but it resulted in harm to no one. The point is that the jury focused on different conduct in answering the two interrogatories pertaining to Purchase, and, thus, its answers were not inconsistent.

II
Besser contends that the verdict is against the weight of the evidence and that it is therefore entitled to a new trial. "An appellate court will overturn a jury verdict `only if that verdict is so far contrary to the weight of the evidence as to give rise to the inescapable conclusion of mistake, passion, prejudice or partiality.'" Kassick v. Milwaukee Elec. Tool Corp., 120 N.J. 130, 134, 576 A.2d 270 (1990) (quoting Wytupeck v. City of Camden, 25 N.J. 450, 466, 136 A.2d 887 (1957)).
The jury's verdict that Besser was liable is supported by substantial credible evidence in the record. Even though Besser produced impressive evidence on the point, the jury was free to believe plaintiff's expert on the issue of Besser's ability to install a limit switch or some other interlock device on the access door of the mixer. We are not free to substitute our judgment on that *431 point for the jury's assessment of the experts' conflicting opinions. Ibid.
Further, there was sufficient evidence in the record from which the jury could infer that there was no such safety device on the mixer when it left the control of Besser. Neither the drawings nor the parts list contained any reference to such a device, and there was no testimony from any of Besser's witnesses that such a device was incorporated in the original design or manufacture of this mixer.

III
We now address plaintiff's cross-appeal. Over the objection of plaintiff, the question of Standley's and Surf's liability was submitted to the jury. Plaintiff argued that there had been no proof as to either party's liability, and, thus, the jury should not be asked to attribute liability to them simply because they settled with plaintiff. The judge agreed with plaintiff that liability should not be assessed against either settling party simply because of the settlement and instructed the jury accordingly. However, the judge told the jury that "for legal purposes" he had to know "the percentage of cause (sic) with respect to those [settling] parties." The only instruction the judge gave the jury in making that decision follows:
[Y]ou have heard testimony with respect to those other two people and so you will tell me what the percentage of those people's liability to the injuries that the plaintiff may or may not have suffered. And you will see I've got Besser, Purchaser (sic), Standley Batch and A Surf Electric, they must add up to 100 percent by the way. Okay? Okay.
Clearly, a non-settling defendant has the right to have a settling defendant's liability apportioned by the jury. Kiss v. Jacob, 138 N.J. 278, 283-84, 650 A.2d 336 (1994); Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548, 566-67, 410 A.2d 674 (1980); Rogers v. Spady, 147 N.J. Super. 274, 278, 371 A.2d 285 (App.Div. 1977). However, that liability must be proven. The fact of settlement does not prove the settlor's liability. "[I]f no issue of fact is properly presented as to the liability of the settling *432 defendant, the fact finder cannot be asked, under N.J.S.A. 2A:15-5.2 or otherwise, to assess any proportionate liability against the settler." Young v. Latta, 233 N.J. Super. 520, 526, 559 A.2d 465 (App.Div. 1989), aff'd, 123 N.J. 584, 589 A.2d 1020 (1991).
Standley was the only one who had a direct contract with Anchor. As such, Standley was, in essence, the general contractor. However, inasmuch as Standley only manufactured conveyors and bins, it hired Purchase to design and manufacture the control system. Standley gave Purchase all of the information necessary for Purchase to complete the drawings. When the drawings were finished they were approved by Standley, whereupon Purchase manufactured the control panel. Purchase designed a "lock out" device for the control panel which would serve to disconnect the power to the control panel, but it was not asked to design anything with respect to the mixers themselves.
Purchase did not visit the Anchor plant during the design or manufacture process. Wooley testified on behalf of Purchase that he saw the entire system in operation after it was installed. While at the Anchor plant he programmed the automatic operation of the system into the control panel as a part of the contract. However, he would never consider putting a safety device on another manufacturer's product unless he was specifically asked to do so. With respect to the absence of an interlock on the mixer, he said: "If Besser didn't furnish it with it, I figured they had a reason not to in this particular case."
Purchase sold the control panel to Standley who, in turn, "marked them up" and sold it as a part of the system to Anchor. Clearly, under the facts of this case, Standley was a "seller" in the context of N.J.S.A. 2A:58C-2. Because it was in the chain of distribution and in the business of selling items of this kind, it could be held strictly liable in tort. Promaulayko v. Johns Manville Sales Corp., 116 N.J. 505, 510, 562 A.2d 202 (1989). However, as the immediate seller of the product to Anchor, it could generally pass its liability up the distributive chain to Purchase, the ultimate designer and manufacturer, and obtain common law indemnification. Id. at 511, 562 A.2d 202. Under *433 that scenario, Standley's and Purchase's percentage of fault would be identical.
Unless it could be shown that Standley had some fault beyond that which was attributed by the jury to Purchase, Standley's and Purchase's liability stood on the same footing and no specific percentage of fault could be attributed to Standley. Cartel Capital, supra, 81 N.J. at 558-562, 410 A.2d 674; Ripa v. Owens-Corning Fiberglas, 282 N.J. Super. 373, 384-385, 660 A.2d 521 (App.Div.), certif. denied, 142 N.J. 518, 665 A.2d 1111 (1995). In this case none of the experts attributed any responsibility to Standley independent of Purchase's liability, nor did Wooley. In the absence of such evidence, there was no factual basis to consider Standley's fault separately, and plaintiff's request should have been granted.
The issue as to Surf is even more clear. Its function in this case was purely as a provider of services. Ramos, supra; Lally v. Printing Mach. Sales & Ser. Co., Inc., 240 N.J. Super. 181, 572 A.2d 1187 (App.Div. 1990). No one testified that it performed those services negligently. In the absence of such proof, Surf's liability should not have been sent to the jury.
The appropriate remedy in such circumstances is to mold the verdict by disregarding the percentages of fault assigned to the non-culpable parties. Ryan v. KDI Sylvan Pools, Inc., 121 N.J. 276, 291-296, 579 A.2d 1241 (1990); Cartel Capital, supra, 81 N.J. at 570, 410 A.2d 674. Accordingly, Besser's and Purchase's combined fault of 60% must be interpolated to reflect their actual share of the total fault expressed in terms of 100%. Thus, Besser's 25% liability correctly expressed is 25/60ths of 100%, or 42% rounded off, while Purchase's 35% liability represents 35/60ths of 100%, or 58% rounded off.

IV
Plaintiffs' contention on cross-appeal that Besser's appeal is frivolous is clearly without merit. R. 2:11-3(e)(1)(E). Therefore, plaintiffs' request for counsel fees is denied.
*434 The judgment under review is affirmed as modified. The matter is remanded solely for the purpose of entering a molded judgment in accord with this opinion.