753 A.2d 1228 (2000)
332 N.J. Super. 540
Miguel DEFFER, as Administrator Ad Prosequendum for the heirs-at-law of Christina Deffer, deceased, as Administrator of the Estate of Christina Deffer, deceased and Individually, Plaintiff-Appellant,
v.
SHOP-RITE SUPERMARKETS INC., d/b/a Shop-Rite of Kearny, Defendant-Respondent. and
St. Michael's Medical Center, Al Haddadin Dafer, M.D., Nadar Moaven, M.D., John Napoli, M.D., Richard Rosa, M.D., United Hospitals Medical Center, George Dixon, M.D., Gowri Rajeswaran, M.D., Nawal Abdelmessieh, M.D., Dante Marra, M.D., James Aragona, M.D. and Francis Lee, M.D., Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted June 5, 2000.
Decided July 11, 2000.
Bongiovanni, Collins & Warden, Denville, for plaintiff-appellant (Jeffrey W. Warden, on the brief).
Gold & Albanese, for defendants-respondent Shop-Rite Supermarket, Inc., d/b/a Shop-Rite of Kearny (James N. Barletti, on the brief).
Ruprecht, Hart & Weeks, for defendant Richard Rosa, M.D. (Renee J. Stern, on the brief).
*1229 Before Judges KEEFE, A.A. RODRÍGUEZ and COLLESTER.
The opinion of the court was delivered by KEEFE, J.A.D.
We granted plaintiff's motion for leave to appeal from an interlocutory order permitting defendant Shop-Right Supermarkets, Inc. d/b/a Shop-Right of Kearney (Shop-Right) to subpoena and elicit expert testimony from plaintiff's medical malpractice expert, Dr. Roschelle, "for the purpose of establishing deviations from accepted standard [sic] of medical practice of settling Co-Defendants, Dr. Moaven, Dr. Marra, St. Michael's Hospital and United Hospital." In essence, Shop-Right intended to use the plaintiff's expert to establish that the settling defendants were tortfeasors and, thus, receive credit for their respective percentages of negligence in the event plaintiff prevailed against Shop-Right. Young v. Latta, 123 N.J. 584, 596, 589 A.2d 1020 (1991). We reverse the order under review.
The relevant facts are undisputed. On January 23, 1994, Christina Deffer slipped and fell in the produce aisle of Shop-Right. She suffered a fractured right fibula. On March 9, 1994, Christina died of a pulmonary embolism, which was directly related to the fracture.
Plaintiff Miguel Deffer thereafter filed suit against Shop-Right alleging negligence. He also sued defendants St. Michael's Medical Center, United Hospitals Medical Center, and Drs. Dafer, Moaven, Napoli, Rosa, Dixon, Rajeswaran, Abdelmessieh, Marra, Aragona, and Lee (the medical provider defendants). Shop-Right filed a cross-claim for indemnification and/or contribution against the medical provider defendants.
Plaintiff retained Dr. Ira A. Roschelle as an orthopedic expert to testify with respect to the causal relationship between the fracture sustained at the Shop-Right and the fatal pulmonary embolism, as well as the defendant medical providers' deviations from accepted standards of medical care. In a report dated September 9, 1997, he concluded that several doctors, specifically Drs. Moaven, Rosa, Marra, Rajeswaran, and Lee deviated from the accepted standards of care in their treatment of the decedent. Dr. Roschelle's deposition was conducted on September 16 and October 14, 1997.
Shop-Right retained Dr. Andrew Newman, an orthopedist, as an expert. His de bene esse deposition was taken on November 19, 1998 to preserve his testimony with respect to the apportionment of damages in anticipation of trial. He was critical of but one of the named medical provider defendants: Dr. Marra.
A trial date was set for January 18, 2000. On January 11, 2000, plaintiff settled with St. Michael's Medical Center for $25,000 and United Hospitals Medical Center for $250,000. Plaintiff voluntarily dismissed all medical malpractice claims against the individual medical providers with prejudice. Following the settlement, Shop-Right served the subject subpoena on Dr. Roschelle requiring him to give deposition testimony on January 13. Plaintiff's attorney immediately advised Shop-Right that he did not intend to call Dr. Roschelle as a witness. (Apparently, plaintiff did not require Dr. Roschelle to testify with respect to the issue of the causal relationship between the fracture and the pulmonary embolism since he had also named Dr. DeGroot as an expert for that purpose as well.) Plaintiff then moved to quash the subpoena and prevent the use of Dr. Roschelle's testimony by Shop-Rite at trial for the purpose of establishing the fault of the medical provider defendants. Plaintiff also sought to bar Dr. Newman from testifying on the ground that he did not have the requisite credentials.
The trial judge denied the motion. He reasoned:
I'm satisfied that the thrust of plaintiff's case was one against wrongful death caused by the medical misconduct involved *1230 in this particular case. And given the further fact, which I consider exigent circumstances of the settlement with the doctors and the hospital on the day of trial, ... it is this Court's opinion that the defendant has a right to call Dr. Rochelle [sic] as a witness in this particular case.
The court appeared to consider it unfair that defendant should be left with the burden of apportioning damages when, based on the judge's appraisal, the thrust of plaintiff's case rested against the defendant medical providers. Summarizing the positions of the parties, the court stated:
Counsel takes the position that the burden would lie upon the defendant to establish its right of indemnification [against the medical providers] by way of its independent proofs.... And now plaintiff seeks to forestall the defendant from pursuing that indemnification right because of the defendant's failure to have appropriate medical support in that, one, defendant now chooses to make use of ... Dr. Rochelle [sic] ... and the second argument being that the defendant's medical expert [Dr. Newman] should be denied the right to testify because ... defendant's expert does not meet the standards which are permitted for him to testify with regard to expert opinion.
Given the elimination of those two witnesses, I suppose, then, the defense would have no way of establishing its right of indemnification.
Thus, having the perception that defendant was procedurally being "squeezed" from both sides, the trial judge ruled not only that defendant's expert, Dr. Newman, was qualified to testify, but also allowed defendant to call Dr. Roschelle. Plaintiff does not appeal the court's ruling with respect to Dr. Newman. Therefore, as plaintiff notes, defendant will not be entirely precluded from asserting its right of apportionment because it is not precluded from using Dr. Newman.
The outcome of this appeal is governed by R. 4:10-2(d)(3) and the principles established in Graham v. Gielchinsky, 126 N.J. 361, 599 A.2d 149 (1991). In Graham, the Court recognized the inherent problem a retaining attorney has when an adverse party is permitted to call the expert engaged by the retaining attorney. For example, as applied to this case, consider the implausibility of plaintiff's attorney confronting Dr. Roschelle on cross-examination with the weakness of his opinion when that information was disclosed to plaintiff's attorney during a confidential pre-trial conference that may have led plaintiff to seek the very settlement that occurred. Is the jury told that Dr. Roschelle was once plaintiff's expert but no longer is? What if Dr. Roschelle denies any weakness in his report and denies the conversation or the accuracy of counsel's understanding of it? In recognition of such a dilemma, the Court said: "[b]ecause effective cross-examination of such witnesses is inherently limited, truth has a better chance to emerge if the use of an adversary's expert is the exception, not the rule." Id. at 373, 599 A.2d 149. Indeed, while the trial judge in this case expressed concern about "the search for truth," there is no more guarantee that the truth lies in Dr. Roschelle's opinion than in Dr. Newman's. This is not a situation in which the medical issues are so esoteric that only Dr. Roschelle possesses the expertise to testify on the subject. See, e.g., Moore v. Kantha, 312 N.J.Super. 365, 377-78, 711 A.2d 967 (App.Div.1998). Rather, the simple truth is that Shop-Right wants to use Dr. Roschelle's testimony because it is more helpful to its desire to spread the blame than the expert testimony it procured, not necessarily because it is more truthful. We doubt that Shop-Right would concede that Dr. Newman was less truthful than Dr. Roschelle simply because his analysis of the record led him to conclude that only Dr. Marra had deviated from accepted medical standards.
Accordingly, it is Shop-Right's rather substantial burden to prove that exceptional circumstances exist to permit it to use Dr. Roschelle's testimony. As is *1231 true under Graham, under Fed.R.Civ.P. 26(b)(4)(B), upon which our rule is modeled, the situation in which the exceptional circumstances standard is met is a rare one. Douglas R. Richmond, Regulating Expert Testimony, 62 Mo. L.Rev. 485, 541-42 (1997). The high burden promotes fairness by "precluding unreasonable access to an opposing party's diligent trial preparation." Durflinger v. Artiles, 727 F.2d 888, 891 (10th Cir.1984)(citing Advisory Committee Notes, Fed.R.Civ.P. 26(b)(4)(B)).
We acknowledge that in certain rare circumstances, "trial surprise or other unfairness will require that such expert opinion evidence be allowed." Graham, supra, 126 N.J. at 374, 599 A.2d 149. But we find no such circumstances present in this case. The fact that a plaintiff may settle with some but not all defendants in advance of trial can hardly be surprising to any defense attorney. It is done with regularity in every vicinage in this State. While plaintiff and Shop-Right shared a common interest in proving a case against the defendant medical providers, there was no agreement between them that plaintiff would not settle with the medical providers, or that they would share the expense of an expert against those defendants. Clearly, plaintiff's attorney's obligation is to his client. He is duty-bound to settle if that is advantageous to his client's position, irrespective of whether he was motivated by a perceived weakness in his medical malpractice case, or a perception that his case against Shop-Right would be strengthened by such a settlement. It can hardly be considered "unfair" for an attorney to settle a case with some but not all defendants when it is in the client's best interests to do so. Surely, Shop-Right understood that if it was held liable for plaintiff's fracture, it would be responsible for all of the damages stemming from that fall, even if a substantial portion of the damages were caused by the malpractice of medical providers. Ciluffo v. Middlesex Gen. Hosp., 146 N.J.Super. 476, 482, 370 A.2d 57 (App.Div.1977). Nor could Shop-Right have been surprised that it would be required to carry the burden of establishing fault against the settling defendants. The body of law governing that principle has been established for some time. See, Mort v. Besser Co., 287 N.J.Super. 423, 431, 671 A.2d 189 (App.Div.1996)(holding that in order to have a settling defendant's liability apportioned, such liability must be proven) certif. denied, 147 N.J. 577, 688 A.2d 1053 (1997). Lastly, Shop-Right cannot claim surprise that its expert's opinion was less favorable to its ability to spread fault among multiple defendants. It knew from at least November 1998 that Dr. Newman found fault with only one of the medical provider defendants, but apparently did not choose to seek the advice of another expert on the subject.
We therefore conclude that the order under review resulted from a mistaken exercise of discretion and must be reversed. The matter is remanded for further proceedings consistent with this opinion.