┌─────────────────────────────────────────────────┐
│           **NOT FOR PUBLICATION WITHOUT THE**           │
│          **APPROVAL OF THE APPELLATE DIVISION**           │
│                                                 │
│ This opinion shall not "constitute precedent or be binding upon any court." │
│ Although it is posted on the internet, this opinion is binding only on the │
│   parties in the case and its use in other cases is limited. R.1:36-3.    │
└─────────────────────────────────────────────────┘

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2471-15T2

IN THE MATTER OF THE ADOPTION
OF THE TOWNSHIP OF MONROE
HOUSING ELEMENT AND FAIR
SHARE PLAN AND IMPLEMENTING
ORDINANCES.

_____

Argued December 21, 2016 — Decided July 17, 2017

Before Judges Alvarez and Manahan.[1]

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3365-15.

Carl R. Woodward, III, argued the cause for appellants/intervenors The Municipal Group and Individual Municipalities (Carella, Byrne, Cecchi, Olstein, Brody & Agnello, attorneys; Mr. Woodward, Brian H. Fenlon, G. Glennon Troublefield, and Megan A. Natale, of counsel and on the briefs).

Kevin D. Walsh argued the cause for respondent Fair Share Housing Center.

_____

[1] Hon. Carol E. Higbee was a member of the panel before whom this case was argued. The opinion was not approved for filing prior to Judge Higbee's death on January 3, 2017. Pursuant to R. 2:13-2(b), "Appeals shall be decided by panels of 2 judges designated by the presiding judge of the part except when the presiding judge determines that an appeal should be determined by a panel of 3 judges." The presiding judge has determined that this appeal shall be decided by two judges.

PER CURIAM

On February 23, 2016, we granted the Municipal Group, a consortium of approximately 270 municipalities combined with thirty-five other individual municipalities (collectively the Municipal Group), leave to intervene in the pending declaratory judgment action filed by Monroe Township. The action was brought in order to clarify Monroe Township's affordable housing obligations. We also granted the Municipal Group leave to appeal a Law Division judge's discovery order compelling disclosure of a preliminary draft report prepared by an expert whose health prevented its completion, and forestalled any likelihood that he would testify. Lastly, we issued a stay of the disclosure order. We now dissolve the stay, affirm the Law Division's disclosure order, and remand the matter for continuation of the declaratory judgment action.

The disputed events occurred after the Supreme Court's March 10, 2015 decision authorizing municipalities to file declaratory judgment actions, on notice to the Fair Share Housing Council (FSHC), and other "interested parties," seeking a declaration that "its housing element and implementing ordinances [were] constitutionally sufficient." In re Adoption of N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 25 (2015) (Mount Laurel IV). To that end,

special masters were appointed to assist trial courts in determining municipal obligations.

Members of the Municipal Group prior to receiving a copy of the draft report, signed a shared services agreement (SSA) which included the following:

> Paragraph 9(d): No Member shall provide any Shared Information, including but not limited to any communications with Burchell[2] or any draft reports from Burchell with any counsel, planner, engineer, or other professional consultant (collectively "Professional Consultants") to that Member if said Professional Consultant also represents any builder or developer who is currently engaged in exclusionary zoning litigation or is contemplating initiating exclusionary zoning litigation or the New Jersey Builder's Associations or similar or related entities. To facilitate the implementation of this provision term, the expert or consultant with whom the designated attorney may consult shall be required to sign a statement or acknowledgement to that effect . . . .

> Paragraph 15: If the firm of the attorney representing the municipality also represents (i) the New Jersey Builder's Association; (ii) a developer seeking a builder's remedy or is presently contemplating bringing a builder's remedy action, the municipality may become part of this consortium subject to the following limitations. Said attorney shall not (i) be made privy to any of the information presented to [Burchell]; (ii) have the right to make submissions to [Burchell]; (iii) be entitled to attend any meetings with [Burchell] or the [Municipal Group]. Nothing

---

[2] "Burchell" is Dr. Robert Burchell of Rutgers University who was retained by the Municipal Group as an expert.

in this paragraph is intended nor shall be interpreted to waive the Rules of Professional Conduct and/or the Local Government Ethics Law.

FSHC filed a motion in the declaratory judgment action on short notice to compel production of the draft report after their Open Public Records Act (OPRA) request to obtain it was refused. On November 19, 2015, the Law Division judge ordered Monroe to produce it, and after the Municipal Group filed an order to show cause for leave to intervene and seek reconsideration, the court conducted a hearing on November 30, 2015. At that hearing, counsel for FSHC named planners and special masters who had been given access to the report but also represented builders in litigation against municipalities. Ultimately, the judge decided that the draft report conclusions were not discoverable, but the data sources, analysis, manner of calculations, mechanisms, and protocols could lead to relevant evidence and were, therefore, discoverable. The court therefore denied the Municipal Group's order to show cause, denied intervenor status, and denied the request for a stay of the enforcement of the disclosure order.

We thereafter granted the Municipal Group's application for leave to appeal and a stay, and remanded the matter in order for additional findings to be made by the judge regarding Rule

4:10-2(c), the attorney-client privilege, the work product doctrine, and the common interest rule.

As a result of the remand order, the judge requested the parties provide him with a copy of the draft report for his in camera inspection. He further directed the Municipal Group produce a list of persons to whom the report had been sent, and certification from each as to whether they had disseminated the report to anyone else, and if so, "to whom, and their relationship to the litigation which may be adverse to any other municipality in declaratory judgment litigation[.]"

The certifications totaled more than 700 pages. Each identified the individuals to whom the person completing the certification had sent the report, and whether those individuals were involved in litigation against a municipality. The court's decision found that because of the widespread dissemination of the report, any privileges were waived. He relied on his review of the certifications as well as other submissions to reach that conclusion. The judge found as a fact that "almost every [s]pecial [m]aster throughout this State is in possession of the draft report."

The judge was particularly concerned about this because, he said, it could "shape the substance and provide a basis for their opinions and recommendations to the designated Mount Laurel

judge," while being inaccessible to the judges themselves or to the FSHC, or other intervenors.  This would allow the Municipal Group an unfair advantage; it would be privy to the information a special master might rely upon in fashioning a recommendation, while the adverse parties would not be.  The judge opined that this imbalance would jeopardize fundamental fairness.  He also concluded that various individuals with "obvious conflicts were recipients of the [] draft."  He named planners who represent municipalities and builders, as well as attorneys whose firms represent municipalities and builders.  The Municipal Group again appealed on leave granted.[3]

## I.

A court's evidentiary rulings are entitled to substantial deference.  Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-85 (2010).  Determinations to admit evidence will not be reversed absent a finding of abuse of discretion.  State v. Wakefield, 190 N.J. 397, 426 (2007) (citing State v. Nelson, 173 N.J. 417, 470 (2002), cert. denied, 552 U.S. 1146, 128 S. Ct. 1074, 169 L. Ed. 2d 817 (2008).

---

[3] We permitted the Municipal Group to supplement the record with certifications in which individual counsel, whose firms represented builders, stated they had not disseminated the report within their office.  Additionally, some individuals specifically refuted representations made by FSHC's counsel regarding their alleged distribution of the report.

A party who wishes to call an expert to testify at trial must provide the expert's report in discovery. R. 4:17-4(e). Disclosure is necessary because the effective cross-examination of an expert requires advance knowledge of the basis for his or her opinion. Graham v. Gielchinsky, 126 N.J. 361, 367 (1991).

Experts' draft reports, however, are produced in preparation for trial and are not necessarily for use in trial. They may only be discovered upon a showing that the party seeking discovery has substantial need of the materials available to the expert and is unable, without undue hardship, to obtain them by other means. R. 4:10-2(c). When an expert has been retained by an adversary and is not expected to testify at trial, a party may only discover the facts known or opinions held by that person "upon a showing of exceptional circumstances." R. 4:10-2(d)(3).

In fact, Fed. R. Civ. P. 26(b)(4)(B), the federal counterpart to our Rule 4:10-2(d)(3), has been described as:

> promote[ing] fairness by precluding unreasonable access to an opposing party's diligent trial preparation, prevent[s] a party from building his own case by means of his opponent's financial resources, superior diligence and more aggressive preparation, and more specifically, [] prevent[s] one party from utilizing the services of the opponent's experts by means of a deposition. See also, Fed. R. Civ. P., 26(b)(4)(B) advisory committee's note (1967). (The rule "reflect[s] the fear that one side will benefit unduly from the other's better

preparation.")

> [Eliasen v. Hamilton, 111 F.R.D. 396, 401 (N.D. Ill. 1986) (internal citations and quotation marks omitted).]

Similarly, New Jersey courts have held that the reason for Rule 4:10-2(d)(3) is to "[promote] fairness by precluding unreasonable access to an opposing party's diligent trial preparation." Deffer v. Shop-Rite Supermarkets, Inc., 332 N.J. Super. 540, 545 (App. Div. 2000) (internal citation marks and citation omitted), overruled in part on other grounds, Fitzgerald v. Roberts, Inc., 186 N.J. 286, 302 (2006).

## II.

The Municipal Group argues first that the draft report should be unavailable because it was issued by a nontestifying expert and should therefore only be discoverable upon a showing of exceptional circumstances as defined in Gielchinsky, supra, 126 N.J. at 361. There, the Court considered, in a medical malpractice action, whether a defendant doctor could call as his own witness a nontestifying expert who had rendered to the plaintiff an opinion unfavorable to his position. Id. at 362. The Court noted that those courts that preclude physicians in medical malpractice cases from testifying against a patient as a liability expert did so in order to protect the well-being of the patient. Id. at 369. Other courts allowed such witnesses to be called on the theory that a

trial is a search for truth, and that the integrity of the process required disclosure. Id. at 370. The Court observed, however, that "truth has a better chance to emerge if the use of an adversary's expert is the exception, not the rule." Id. at 373. Therefore, the Court held that "in the absence of exceptional circumstances, as defined under Rule 4:10-2(d)(3), courts should not allow the opinion testimony of an expert originally consulted by an adversary." Id. at 373.

Interestingly enough, given the parties to this dispute, the Court went on to state "when the public interest is involved, supervening policy concerns may require the use of such evidence to prevent misuse of either the public trust or public funds." Id. at 374. The Court cited as an example of the principle, litigation involving landowners who were permitted to call the State's expert appraiser to testify on their behalf in order to ensure that the land in a condemnation proceeding was obtained at a price fair to the public and to the property owner. Ibid.

Rule 4:10-2(d)(3) specifically provides:

> A party may discover facts known or opinions held by an expert . . . who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial only upon a showing of exceptional circumstances under which it is impractical for the party seeking discovery to obtain facts or opinions on the same

subject by other means. If the court permits such discovery, it shall require the payment of the expert's fee provided for by Rule 4:10-2(d)(2), and unless manifest injustice would result, the payment by the party seeking discovery to the other party of a fair portion of the fees and expenses which had been reasonably incurred by the party retaining the expert in obtaining facts and opinions from that expert.

In this case, despite the most scrupulous adherence to the agreement on the part of each individual whose certification was obtained, clearly the report was shared with others within each municipality who were not similarly bound. More than 200 certifications were filed. Although the persons who signed the certifications no doubt strictly complied with the terms of the SSA, and only shared the report with certain named individuals associated with the municipalities, those individuals were not members of the Municipal Group, nor bound by the SSA. It is unsurprising that the report would have been disseminated to individuals not required to comply with the SSA. Thus, to prevent the FSHC from obtaining access would be both unrealistic and not in keeping with the goals of Rule 4:10-2(d)(3). The point of the rule is to bar discovery when it would provide one party an unfair advantage. Potentially hundreds if not thousands of people have already seen this draft report. It would actually be unfair, under those circumstances, to deny FSHC access, if not to the

10

opinions, to at least the information upon which it was formulated. The widespread and natural dissemination of the draft report, which includes persons not bound by the SSA, meets the definition of an exceptional circumstance. It is one unlikely to have previously occurred, or to occur again.

Additionally, it would not be equitable under the circumstances for any portion of the expert's fees to be paid by FSHC. Meeting fair housing obligations would not be an appropriate forum in which to shift the costs. See State Dept. of Envtl. Prot. v. Ventron Corp., 182 N.J. Super. 210 (App. Div. 1981), aff'd as modified, 94 N.J. 473 (1983).

### III.

N.J.R.E. 504 and N.J.S.A. 2A:84A-20 provide that communications made in professional confidence between an attorney and a client are privileged, unless knowingly made within the hearing of a person whose presence nullifies the privilege. Where two or more people employ a lawyer to act for them in common, none can assert the privilege against the others for communications involving that matter. N.J.S.A. 2A:84A-20(2).

The attorney-client privilege protects only those communications expected or intended to be confidential. O'Boyle v. Borough of Longport, 218 N.J. 168, 185-86 (2014). It also extends to consultations with third parties whose advice is

necessary to the legal representation.  Ibid.  But it is waived when a confidential communication between attorney and client is revealed to a third party, unless the third party disclosure is necessary to advance the representation.  Ibid.

The Municipal Group contends the report is protected by the attorney-client privilege as it was a product of privileged communications between the expert and representatives of the group.  That the privilege was protected was demonstrated by the individual certifications setting forth dissemination of the report with the confidentiality the SSA required.  Thus the Municipal Group argues that since the certifications establish that confidentiality was maintained, the attorney-client privilege was never waived.

This argument lacks merit.  Paragraph 9(d) of the SSA could not contain any directive which would address familiarity with the report and any future conflict.  It could not address distribution of the report to individuals who were not prohibited from sharing it with clients whose interests might be in conflict with the group, or even municipal employees.  The draft report was disseminated to persons who never executed the SSA and were therefore not bound by its terms.

Accordingly, we hold that the Municipal Group has waived the attorney-client privilege by disseminating the draft report to

persons who, actually or potentially, have adverse interests to the Municipal Group, and who, according to the SSA were not authorized to receive copies. We do agree with the Municipal Group that the sheer number of persons receiving the draft report is in and of itself not conclusive. See id. at 187. But the "presence of a stranger negates the privilege for communications made in the stranger's presence." Ibid. (citing Restatement (Third) of the Law Governing Lawyers, § 76(1) comment c (2002)). Here, an unknown but substantial number of strangers were given access to the report.

The common interest rule protects communications made to a non-party who shares the client's interests. In re State Comm'n of Investigation, 226 N.J. Super. 461, 466-68, (App. Div.), certif. denied, 113 N.J. 382 (1988). We found in In re State that there was a common interest when two groups were formally related, and had closely intertwined operations and identical legal interests. Id. at 464-68.

> [T]he common-interest privilege somewhat relaxes the requirement of confidentiality . . . by defining a widened circle of persons to whom clients may disclose privileged communications. . . . [Privileged] communications of several commonly interested clients remain confidential against the rest of the world, no matter how many clients are involved. However, the known presence of a stranger negates the privilege for

> communications made in the stranger's presence.
>
> [O'Boyle, supra, 218 N.J. at 187 (citation omitted).]

In the ordinary situation, the Municipal Group's argument that the common interest rule applies, and that therefore the attorney-client privilege remains intact, would have some weight. See LaPorta v. Gloucester Cty. Bd. of Chosen Freeholders, 340 N.J. Super. 254, 262 (App. Div. 2001). A common interest exception applies where disclosure is made for the purpose of advancing a common interest and doing so in a manner not inconsistent with maintaining confidentiality. Ibid. In this case, however, it is unclear if dissemination has not already occurred to persons who do not share those common interests. Therefore, the attorney-client privilege does not protect the document either.

The work product doctrine recognizes the need for lawyers to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." O'Boyle, supra, 218 N.J. at 189-90 (citation omitted). Rule 4:10-2(c) provides, however, that a party may obtain discovery of material prepared in anticipation of litigation by another party's attorney or consultant (i.e., work product) "upon a showing that the party seeking discovery has substantial need of the materials . . . and

is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

Disclosure of his or her work product to a third party by an attorney waives the protection, unless such disclosure is confidential, such as pursuant to the common interest rule. O'Boyle, supra, 218 N.J. at 189-90. If the material is disclosed in a manner that is inconsistent with keeping it from an adversary, the work product doctrine is waived. Id. at 192. The inquiry focuses on whether the disclosure to a third party reached an adversary or made it substantially likely that the protected material would reach an adversary. Ibid.

The Municipal Group argues the report was protected work product, for which FSHC did not assert a substantial need or demonstrate that it could not secure the information by any other means. The extent of dissemination, which included persons not covered by the SSA, and persons who may represent interests adverse to the group, removes that mantle of protection. Although the trial judge did not explicitly discuss Rule 4:10-2(c), he did discuss O'Boyle's explanation of the rule. As he noted, when an attorney discloses his or her work product to an adverse third party, the privilege is deemed waived. See O'Boyle, supra, 218 N.J. at 189.

It is unrealistic for the Municipal Group to contend that the extent to which that draft report was shared magically shielded it from disclosure to adversaries, or prevented it from reaching adversaries. It is unrealistic to assume that even if the signatories to the SSA kept the report confidential from their clients, they or others associated with them would not have benefitted from the knowledge thus gained to advance adversarial positions. This reality pierces any confidentiality. Accordingly, the report does not enjoy the protection of the work product privilege either.

Affirmed. The stay is dissolved and the matter is remanded for further proceedings in accord with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION