SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Martin E. O'Boyle v. Borough of Longport** (A-16-12) (070999)

**Argued November 18, 2013 -- Decided July 21, 2014**

**CUFF, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court addresses the application of the common interest rule, which extends the confidentiality of attorney-client communications and attorney work product to information shared with attorneys representing separate clients, in the context of a request for production of public records pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law right to access government records.

Martin E. O'Boyle is a resident of the Borough of Longport who previously filed several complaints against the Borough and its officials regarding Borough governance. In 2008 and 2009, O'Boyle filed separate lawsuits against a former planning and zoning board member, Peter Isen, and two Longport residents.  David Sufrin, the private attorney representing Isen and the Longport residents, suggested to Longport's municipal attorney that they cooperate in the defense of current and anticipated litigation filed by O'Boyle.  To that end, Sufrin prepared a joint strategy memorandum and a compendium of documents contained on CDs and sent them to the municipal attorney.  In time, the municipal attorney returned the assembled documents to Sufrin.

O'Boyle submitted OPRA and common law right of access requests to the Borough Clerk that encompassed the materials exchanged between Sufrin and the municipal attorney.  Longport withheld those materials from its production, asserting that they were privileged.  O'Boyle filed a verified complaint seeking access to the withheld documents pursuant to OPRA and the common law right of access.  The trial court dismissed the case with prejudice, determining that the withheld documents were not public records subject to production under either law.  The Appellate Division affirmed.  O'Boyle v. Borough of Longport, 426 N.J. Super. 1 (App. Div. 2012). The panel assumed that the withheld materials were public records and found that the materials constituted Sufrin's protected attorney work product.  The panel held that the materials remained privileged, despite being shared with the municipal attorney, under the common interest rule.  The Appellate Division also concluded that the withheld documents did not have to be produced under the common law right of access because, even if the materials were public documents, O'Boyle's interest in accessing the materials did not overcome Longport's interest in withholding them.  The Court granted O'Boyle's petition for certification.  212 N.J. 431 (2012).

**HELD**: The Court expressly adopts the common interest rule as articulated in LaPorta v. Gloucester County Board of Chosen Freeholders, 340 N.J. Super. 254 (App. Div. 2001).  Applying that rule, the private attorney's protected attorney work product remained privileged despite its disclosure to the third-party municipal attorney because the materials were shared in a manner calculated to preserve their confidentiality, in anticipation of litigation, and in furtherance of a common purpose.  The requestor also failed to articulate a particularized need for the withheld materials as required to obtain privileged materials under the common law right of access.

1. The attorney-client privilege shields the disclosure of documents otherwise accessible under OPRA.  K.L. v. Evesham Twp. Bd. of Educ., 423 N.J. Super. 337 (App. Div. 2011), certif. denied, 210 N.J. 108 (2012).  The attorney-client privilege is ordinarily waived when a confidential communication is revealed to a third party, unless the communication is disclosed to the third party to advance the legal representation.  Rawlings v. Police Dep't of Jersey City, 133 N.J. 182 (1993).  Over the years, various relationships have formed to permit an exchange of confidential attorney-client communications beyond the narrow confines of the attorney and client and a third party retained to assist the representation.  The common interest rule was first discussed in the context of the attorney-client privilege In re State Comm'n of Investigation Subpoena No. 5441 (SCI), 226 N.J. Super. 461 (App. Div.), certif. denied, 113 N.J. 382 (1988).  In SCI, the court held that a client's confidential sharing of a report created by its attorney in anticipation of litigation with an "interrelated" non-client entity with "a common interest" did not waive the attorney-client privilege.  The Restatement (Third) of the Law Governing Lawyers § 76(1) (2000) (Restatement) also recognizes that the exchange of confidential information between or among two or more clients with a common interest in a litigated or non-litigated matter, who are represented by different attorneys, preserves the privilege against third parties. (pp. 13-20)

2. The work-product doctrine also shields the disclosure of documents otherwise accessible under OPRA. Sussex Commons Assocs., LLC v. Rutgers, the State Univ., 210 N.J. 531 (2012). In most instances, disclosure by an attorney of his or her protected work product to a third party functions as a waiver of the protection. N.J.S.A. 2A:84A-29; N.J.R.E. 530. In LaPorta v. Gloucester County Board of Chosen Freeholders, 340 N.J. Super. 254 (App. Div. 2001), the Appellate Division applied the common interest rule in the work-product context, concluding that that the rule may extend the protection of work product shared "among counsel for different parties if (1) the disclosure is made due to actual or anticipated litigation; (2) for the purposes of furthering a common interest; and (3) the disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse parties." Id. at 262. The panel emphasized that it is not necessary for the interest of every party to be identical; instead, the focus is whether the parties have a common purpose, measured at the time the protected documents are disclosed. Id. at 262-63. The panel also found it is sufficient that litigation is contemplated, rather than commenced, for the common interest rule to apply; that the common interest applies in civil or criminal proceedings; and that, in addition to communication between counsel, the rule protects communication "between counsel for a party and an individual representative of a party with a common interest." Id. at 262. Although the common interest rule applies in both the attorney-client privilege and the work-product context, the scope of protected sharing depends on which privilege applies because the work-product doctrine permits disclosure to a wider circle of third-parties without waiver of the privilege than the attorney-client privilege. (pp. 20-32)

3. Access to public documents may also be procured in accordance with the common law right of access. Unlike OPRA, disclosure pursuant to the common law right of access "must be balanced against the State's interest in preventing disclosure." Educ. Law Ctr. v. N.J. Dep't of Educ., 198 N.J. 274 (2009). In order to determine whether the common law right of access applies to a particular set of records, a court must first determine whether the documents in question are "public records." Atl. City Convention Ctr. Auth. v. S. Jersey Publ'g Co., 135 N.J. 53 (1994). Second, the party seeking disclosure must show that he has an interest in the public record. If the record is privileged, the requestor must articulate a "particularized need." Wilson v. Brown, 404 N.J. Super. 557 (App. Div.) (citing McClain v. Coll. Hosp., 99 N.J. 346 (1985)), certif. denied, 198 N.J. 473 (2009). Finally, once an interest is established, the burden shifts to the public entity to establish that its need for non-disclosure outweighs the plaintiff's need for disclosure. Educ. Law Ctr., 198 N.J. at 303. (pp. 32-33)

4. The common interest rule is designed to permit the free flow of information between or among counsel who represent clients with a commonality of purpose. It offers all parties to the exchange the real possibility for better representation by making more information available to inform decision-making in anticipation of litigation. Although the Court recognizes that any privilege, including the attorney-client privilege and work-product protection, restricts the disclosure of information and may intrude on the fact-finding function of litigation, the Court finds that the rule recognized in LaPorta strikes an acceptable balance of competing interests. The Court, therefore, expressly adopts the common interest rule as articulated in LaPorta. Common purpose extends to sharing of trial preparation efforts between attorneys against a common adversary. The attorneys need not be involved in the same litigated matter or anticipated matter. The rule also encompasses the situation in which certain disclosures of privileged material are made to another attorney who shares a common purpose, for the limited purpose of considering whether he and his client should participate in a common interest arrangement. (pp. 33-37)

5. The protected attorney work product disclosed by Sufrin to the municipal attorney remained privileged pursuant to the common interest rule. Sufrin and Longport shared a common purpose at the time of the disclosure because Longport had defended many civil actions filed against it by O'Boyle and anticipated further litigation from O'Boyle, and Sufrin was attempting to defend a civil action commenced by O'Boyle arising out of one client's official position and others' participation in civic affairs. Sufrin also disclosed his work product in a manner calculated to preserve its confidentiality. There is no evidence that the municipal attorney shared the material with anyone else, including O'Boyle. Once the municipal attorney declined to enter a joint defense strategy, he returned the privileged material, thereby minimizing even an inadvertent disclosure. Finally, although privileges may be overcome by a showing of particularized need under the common law right of access, O'Boyle failed to demonstrate a particularized need for the privileged material supplied to the municipal attorney. (pp. 37-39)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA and ALBIN and JUDGE RODRÍGUEZ (temporarily assigned) join in JUDGE CUFF's opinion. JUSTICE PATTERSON did not participate.**

2

MARTIN E. O'BOYLE,

    Plaintiff-Appellant,

        v.

BOROUGH OF LONGPORT, and
THOMAS HILTNER in his
capacity as Borough of
Longport Clerk and Custodian
of Records,

    Defendants-Respondents.


        Argued November 18, 2013 – Decided July 21, 2014

        On certification to the Superior Court,
        Appellate Division, whose opinion is
        reported at 426 N.J. Super. 1 (2012).

        Jonathan R. O'Boyle, a member of the
        Pennsylvania bar, and Walter M. Luers argued
        the cause for appellant (Mr. Luers,
        attorney).

        Gene R. Mariano argued the cause for
        respondents (Parker McCay, attorneys; Stacy
        L. Moore, Jr., on the brief).

        Matthew T. Nelson, a member of the Michigan
        bar, argued the cause for amicus curiae DRI-
        The Voice of the Defense Bar (Goldberg
        Segalla, attorneys; Mr. Nelson, Michael J.
        Leegan, and Mary Massaron Ross, a member of
        the Michigan bar, on the brief).

        Thomas Hoff Prol argued the cause for amicus
        curiae New Jersey State Bar Association
        (Paris P. Eliades, President, attorney; Mr.
        McCann, of counsel; Mr. Prol and Mr. McCann,
        on the brief).

Jeffrey S. Mandel argued the cause for amici curiae Association of Criminal Defense Lawyers of New Jersey and The National Association of Criminal Defense Lawyers (PinilisHalpern, attorneys; Mr. Mandel and Jenny E. Carroll, on the brief).

Edward J. Fanning, Jr., submitted a brief on behalf of amicus curiae New Jersey Defense Association (McCarter & English, attorneys; Mr. Fanning and Roktim Kaushik, on the brief).

JUDGE CUFF (temporarily assigned) delivered the opinion of the Court.

This appeal allows the Court to address the application of the common interest rule, which extends the confidentiality of attorney-client communications and attorney work product to information shared with attorneys representing separate clients, in the context of a request for production of public records pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law right to access government records. Although the common interest rule has been addressed in two published Appellate Division opinions, this is the first opportunity for this Court to address the rule.

Martin E. O'Boyle is a resident of the Borough of Longport (Borough or Longport), a small, oceanside town in Cape May County. We discern from the record that he has taken an active interest in the affairs of the municipality in the course of which he has attended public meetings, questioned public

2

officials, and offered comments on matters of public interest. He also has made many requests for access to public records pursuant to OPRA and the common law right of access, and filed several complaints against the Borough and its officials regarding governance of the Borough. In 2008 and 2009, O'Boyle filed separate lawsuits against a former planning and zoning board member, Peter Isen,[1] and two Longport residents, Frank DiLorenzo, Sr. and Anthony DiLorenzo, Sr.

The private attorney representing Isen and the Longport residents suggested to the municipal attorney that they cooperate in the defense of current and anticipated litigation filed by O'Boyle. To that end, the private attorney prepared a joint strategy memorandum and a compendium of documents contained on CDs and sent them to the municipal attorney. In time, the municipal attorney returned the assembled documents to the other attorney.

O'Boyle submitted OPRA and common law right of access requests to the Borough Clerk. The requests encompassed the documents exchanged between the private attorney and the municipal attorney. Longport filed a timely response producing all but six documents exchanged between the private attorney and the municipal attorney. Longport asserted that those documents

---

[1] The Appellate Division affirmed an order granting summary judgment and dismissing O'Boyle's defamation action against Isen in an unpublished September 2011 opinion.

3

were privileged. O'Boyle filed a complaint in the Superior Court to obtain the withheld documents. The trial court dismissed the case with prejudice, determining that the withheld documents were not public records subject to production pursuant to OPRA or the common law right of access. On appeal, the Appellate Division assumed that the withheld documents were public records, and concluded the exchanged documents constituted work product of the private attorney and were not subject to production. The panel invoked the common interest rule, concluding that the municipal residents and the former municipal official represented by the private attorney and Longport shared a common interest that permitted non-disclosure of the withheld documents.

After examining the arguments presented by the parties and amici to either broaden, narrow, or restate the common interest rule as expressed in LaPorta v. Gloucester County Board of Chosen Freeholders, 340 N.J. Super. 254 (App. Div. 2001), we decline to do so. Rather, we expressly adopt the common interest rule as articulated in LaPorta. We also conclude that the Appellate Division properly determined that the parties to the pending and anticipated O'Boyle litigation shared a common purpose and that O'Boyle failed to demonstrate a particularized need to access the shared work product. Therefore, neither OPRA

4

nor the common law permits access to the shared work product, and we affirm the judgment of the Appellate Division.

I.

On April 23, 2010, O'Boyle requested copies of certain designated records pursuant to OPRA and the common law right of access. On May 4, 2010, Longport supplied some documents but refused to produce the following documents:

> 1) An August 20, 2009 letter from the municipal attorney to David Sufrin, counsel for Isen and the Longport residents;
>
> 2) A September 18, 2009 letter from Sufrin to the municipal attorney captioned "Confidential: Joint-Defense Strategy Memorandum – Attorney Joint Defense Work Product not for Disclosure to Third Parties";
>
> 3) A September 29, 2009 letter from Sufrin to the municipal attorney captioned "Confidential Joint-Defense Attorney Work Product";
>
> 4) A second September 29, 2009 letter from Sufrin to the municipal attorney accompanied by two CDs;
>
> 5) An undated letter from Sufrin to the municipal attorney reviewed by the municipal attorney on October 20, 2009; and
>
> 6) The contents of a third CD Sufrin provided to the municipal attorney reviewed by the municipal attorney on October 14, 2009.

Longport claimed the withheld documents were privileged, and further noted that those documents were not in Borough custody

5

because the municipal attorney had returned the CDs to Sufrin before O'Boyle filed his OPRA request.

O'Boyle filed a verified complaint in the Superior Court seeking access to the withheld documents pursuant to OPRA and the common law right of access. The trial court conducted an in camera review of the correspondence and held oral argument. Although the court characterized the correspondence as "relatively short, innocuous letters" of no interest to O'Boyle, the court also determined that neither the correspondence nor the CDs were public records and that they were protected by the attorney-client privilege. Furthermore, the trial court concluded it could not compel Sufrin to disclose the returned CDs because he was not an agent of the municipality. Therefore, the court dismissed the complaint and sealed the correspondence.

On appeal, the Appellate Division affirmed the trial court's order. In a published opinion, O'Boyle v. Borough of Longport, 426 N.J. Super. 1 (App. Div. 2012), the appellate panel did not resolve whether the requested documents were public records pursuant to OPRA. Rather, assuming the requested documents were public records, the panel determined that the documents were of the sort protected by the work-product doctrine and that OPRA does not abrogate any grant of confidentiality recognized by statute, court rule, or common law. Id. at 8-9. Furthermore, the appellate panel recognized

6

that the common interest rule applies with equal force to communications protected by the attorney-client privilege and the work-product doctrine. Id. at 9-10. Noting that Sufrin's clients had been sued by O'Boyle as a result of their connection to the Borough and their involvement in governance of the Borough, and that the Borough reasonably anticipated further litigation with O'Boyle, the panel concluded that "Sufrin's clients and these defendants . . . share a common interest . . . i.e., the defense of litigation spanning several years initiated by [O'Boyle] related to his ongoing conflicts with Longport and individuals associated with the municipality." Id. at 11-12. Therefore, the Appellate Division determined that the letters and CDs were protected by the work-product doctrine and that OPRA did not require access by O'Boyle to these documents. Id. at 12.

The Appellate Division also concluded that the withheld documents were not subject to production pursuant to the common law right of access. Id. at 13. Although the common law right includes more documents as public records, the panel determined that the letters and CDs produced by Sufrin were not public records. Ibid. Furthermore, the municipal attorney's letter to Sufrin was not written "in the exercise of a public function." Ibid. Assuming, however, that the letter from the municipal attorney could be considered a public document because it was

written to further the interest of the municipality, the Appellate Division concluded that O'Boyle's interest in access to the letter did not overcome Longport's interest in withholding documents considered by its attorney in anticipation of litigation with the requestor. Id. at 13-14. Finally, the panel concluded that the trial court was not required to view the contents of the CDs. Id. at 14. The panel reasoned that the documents returned to Sufrin had not been prepared by him at the behest of the municipality or the municipal attorney. Ibid. Furthermore, the documents had been returned to Sufrin in compliance with his request rather than a desire to shelter otherwise producible documents. Ibid. The Court granted O'Boyle's petition for certification. 212 N.J. 431 (2012).

## II.

### A.

O'Boyle contends that the withheld records are government records pursuant to OPRA. Indeed, he contends that almost every record generated by employees of a public entity, with the exception of "junk mail" and personal exchanges between municipal employees, are government records. He argues that OPRA reaches documents prepared and maintained by third parties acting as agents of a public entity. O'Boyle urges that the analysis must focus on the scope of the authority of the public entity agent, not his or her title. Employing this analysis

8

leads to the conclusion that documents received by the municipal attorney must be considered government records. Furthermore, O'Boyle contends that the withheld documents clearly fall within the broad common-law definition of public records.

O'Boyle urges that the Appellate Division's interpretation of the common interest rule is too broad. He asserts that the rule should be limited to situations in which the parties "have strictly legal interests in the same transaction or occurrence; and protect only those communications which are related to and in furtherance of those interests." Furthermore, O'Boyle argues that the common interest rule articulated in LaPorta is vague and does not clearly define when parties have the requisite relationship to permit sharing confidential communications. By contrast, he asserts that the rule he advances will "smother uncertainty" and prevent inadvertent disclosure of confidential communications.

O'Boyle also contends that this Court should affirm the current law in this State that disclosure of work product waives the privilege "unless the disclosure is specifically protected by law." He contends that Sufrin voluntarily shared the materials with the municipal attorney with little or no regard for the OPRA implications of his action and in a manner that substantially increased the likelihood of distribution to third parties, such as him. Finally, he suggests that the purported

basis of the common interest rule was negated when Longport declined the cooperation overture.

B.

Longport and Thomas Hiltner, the Borough Clerk and Custodian of Records, argue that the trial court properly denied access to the withheld documents. First, they contend that the documents prepared by a third party in the course of representing private individuals are not public records within the scope of OPRA or the common law right of access. Second, Longport and Hiltner argue that the records obtained by the attorney representing Longport are not subject to disclosure because they are subject to the privilege accorded to attorney-client communications and attorney work product. They contend the documents were prepared in anticipation of litigation and the brief review by the municipal attorney did not convert those documents into public records subject to review pursuant to OPRA or the common law right of access. Finally, Longport and Hiltner contend that the return of the documents to Sufrin at his request precluded production of the requested documents.

C.

Amicus curiae New Jersey State Bar Association (NJSBA) requests that the Court provide "the widest berth by which attorneys can advocate for their clients in free and unburdened fashion without fear they are susceptible to having their

10

thoughts and ideas made accessible and used against them by an adversary." NJSBA urges that attorneys "should be reasonably unfettered" when they work with other attorneys with mutual interests and common goals to pursue a litigation strategy designed to benefit the interests of their clients. To that end, NJSBA urges that documents exchanged between private counsel representing a former municipal official and others involved in municipal affairs and the municipal attorney should enjoy the protection afforded by the common interest rule, whether the exchange implicates the attorney-client privilege or the companion work-product doctrine.

Furthermore, NJSBA argues that the protection afforded by the common interest rule or joint defense doctrine[2] should not depend on a written agreement between or among the attorneys. Rather, such an agreement may be readily implied by the efforts undertaken by the participating attorneys to assure non-disclosure to adverse parties.

Amici Association of Criminal Defense Lawyers of New Jersey (ACDL-NJ) and the National Association of Criminal Defense Lawyers (NACDL) argue that the Court should interpret the joint defense doctrine to include exchanges of information between attorneys that are intended to be confidential and that are

---

[2] The terms "joint defense doctrine" and "common interest rule" are used interchangeably by some.

exchanged pursuant to a common interest. The exchanged information may otherwise be confidential communications between attorney and client or work product. Amici urge that the communication must relate to a common interest which may be legal, factual, or strategic, measured by the interest at the time the information is disclosed. Furthermore, like NJSBA, ACDL-NJ and NACDL contend that an agreement to exchange confidential information or work product need not be reduced to writing.

Amicus New Jersey Defense Association (NJDA) argues that the common interest doctrine "finds its origins" in the attorney-client privilege, that the doctrine has been adopted in this State, and has been applied in the work-product context. NJDA asserts, however, that the Appellate Division adopted an unreasonably broad definition of government records in its opinion. Amicus contends that documents prepared by private counsel for a private citizen should not be transformed into a government record simply by sharing those documents with the attorney representing the municipality.

Amicus DRI-The Voice of the Defense Bar (DRI) contends that the Appellate Division appropriately concluded that the documents withheld by Longport were protected from disclosure. It observes, however, that the appellate panel followed the minority rule and "applied the waiver rules governing attorney-

client privilege to the work-product doctrine." It urges that this Court should affirm the Appellate Division's result but adopt the majority approach to waiver of the work-product doctrine. DRI asserts the majority approach is more conducive to collaboration and cooperation between and among attorneys.

                                III.

This appeal addresses the intersection of two well-recognized public policies. One is the public policy favoring access to "information to enable the public to understand and evaluate the reasonableness" of action taken by a public entity. Kuehne Chem. Co. v. N. Jersey Dist. Water Supply Comm'n, 300 N.J. Super. 433, 438 (App. Div.), certif. denied, 151 N.J. 466 (1997). The other is the need for an attorney and his client to communicate in confidence and the closely related need for an attorney to keep work performed for a client from disclosure to an adversary. OPRA addresses the ability of the public to gain access to government records. The attorney-client privilege and the work-product doctrine bestow the confidentiality needed to foster a client's best interests. Here, we address the application of the common interest rule as it applies to the attorney-client privilege and work-product doctrine and its impact on the public right to access government records granted by OPRA and the common law.

13

The Legislature adopted OPRA "'to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" Mason v. City of Hoboken, 196 N.J. 51, 64 (2008) (quoting Asbury Park Press v. Ocean Cnty. Prosecutor's Office, 374 N.J. Super. 312, 329 (Law Div. 2004)). To that end, OPRA "shall be construed in favor of the public's right to access." N.J.S.A. 47:1A-1.

OPRA defines "[g]overnment record" broadly, to include

> any paper . . . information stored or maintained electronically or by sound-recording or in a similar device, or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer . . . of the State . . . , or that has been received in the course of his or its official business by any such officer . . . . The terms shall not include inter-agency or intra-agency advisory, consultative, or deliberative material.

[N.J.S.A. 47:1A-1.1.]

This Court has considered "any document kept on file or received in the course of the official business of an 'agency' of a political subdivision [as] a government record." Fair Share Hous. Ctr., Inc. v. N.J. State League of Municipalities, 207 N.J. 489, 508 (2011).

Despite the expansive definition of government record, not all documents prepared by public employees are considered

14

government records pursuant to OPRA. See Bart v. City of Paterson Hous. Auth., 403 N.J. Super. 609, 617 (App. Div. 2008), certif. denied, 198 N.J. 316 (2009). For example, a board of education secretary's informal, handwritten notes taken during a board meeting to assist her preparation of formal minutes of the board meeting are not subject to public access pursuant to OPRA. See O'Shea v. W. Milford Bd. of Educ., 391 N.J. Super. 534, 536-38 (App. Div.), certif. denied, 192 N.J. 292 (2007). On the other hand, a document by a third party, such as a bill for services prepared by an attorney retained by a public entity and submitted to it for payment, is subject to public access pursuant to OPRA. Hunterdon Cnty. Policemen's Benevolent Ass'n Local 188 v. Twp. of Franklin, 286 N.J. Super. 389, 393 (App. Div. 1996).

A government record may be excluded from disclosure by other statutory provisions or executive orders, N.J.S.A. 47:1A-9(a), or exempt from disclosure due to a recognized privilege or grant of confidentiality established in or recognized by the State Constitution, statute, court rule, or judicial decision, N.J.S.A. 47:1A-9(b).

The attorney-client privilege is a recognized privilege that may shield documents that otherwise meet the OPRA definition of government record from inspection or production. K.L. v. Evesham Twp. Bd. of Educ., 423 N.J. Super. 337, 352-53

15

(App. Div. 2011), certif. denied, 210 N.J. 108 (2012); Gannett N.J. Partners, L.P. v. Cnty. of Middlesex, 379 N.J. Super. 205, 218 (App. Div. 2005). Documents that fall within the scope of the work-product doctrine are also shielded from OPRA. Sussex Commons Assocs., LLC v. Rutgers, the State Univ., 210 N.J. 531, 548 (2012).

## A.

Confidential communications between a client and his attorney in the course of a professional relationship are privileged. N.J.S.A. 2A:84A-20; N.J.R.E. 504. However, the privilege does not attach to a communication knowingly made within the hearing of any person whose presence nullifies the privilege. N.J.R.E. 504(3). In other words, the privilege protects only those communications expected or intended to be confidential. Coyle v. Estate of Simon, 247 N.J. Super. 277, 282 (App. Div. 1991).

The privilege is not restricted to legal advice. Rivard v. Am. Home Prods., Inc., 391 N.J. Super. 129, 154 (App. Div. 2007). The privilege also extends to consultations with third parties whose presence and advice are necessary to the legal representation. State v. Davis, 116 N.J. 341, 361 (1989). Furthermore, the privilege survives the termination of the attorney-client relationship. Id. at 362. The privilege must yield, however, in furtherance of "overriding public policy

16

concerns," United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 563 (App. Div. 1984), or other important societal concerns, In re Kozlov, 79 N.J. 232, 243-44 (1979).

The attorney-client privilege is ordinarily waived when a confidential communication between an attorney and a client is revealed to a third party. Stengart v. Loving Care Agency, Inc., 201 N.J. 300, 323 (2010). If, however, the third party is a person to whom disclosure of confidential attorney-client communications is necessary to advance the representation, disclosure will not waive the privilege. Rawlings v. Police Dep't of Jersey City, 133 N.J. 182, 196 (1993); State v. Kociolek, 23 N.J. 400, 413 (1957).

Over the years, various relationships have formed to permit an exchange of confidential attorney-client communications beyond the narrow confines of the attorney and client and a third party retained to assist the defense while preserving the privileged character of the disclosed communication. The joint defense agreement between or among individuals subject to a criminal investigation or indictment is the precursor to the current common interest rule. See 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2024 at 210 (1st ed. 1970). The common interest rule, however, is not confined to criminal matters. See In re State Comm'n of

17

Investigation Subpoena No. 5441 (SCI), 226 N.J. Super. 461 (App.

Div.), certif. denied, 113 N.J. 382 (1988).

The first discussion of the common interest rule in a

reported decision in this State addressed the rule in the

context of the attorney-client privilege. In SCI, supra, the

State Commission of Investigation subpoenaed a report prepared

by an attorney retained by the New Jersey School Boards

Association (the Association). 226 N.J. Super. at 464. The

Association retained an attorney to conduct an investigation, to

provide legal advice, to make recommendations, and to take steps

in anticipation of litigation arising from alleged improprieties

in the investment procedures of the insurance group created by

the organization. Id. at 463. The attorney prepared a written

report and shared it with the Association, which in turn shared

it with trustees of the insurance group. Id. at 464. Measures

were taken to ensure the confidentiality of the report from

disclosure to anyone outside those carefully delineated and

inter-related groups. Ibid.

The Appellate Division held that sharing the report with

trustees of the Association insurance group did not waive the

attorney-client privilege. Id. at 468. In so holding, the

panel explained that

> [t]he two entities are formally
> interrelated, the Group having been created
> at the instance of [the Association]. The

18

operations of the entities are at least as closely intertwined as are sister or parent-subsidiary corporations . . . . Because of their interrelationships, [the Association] and the Group have a common interest in the operation of the Group and the SCI investigation of the Group. Indeed, [the attorney] was retained because of [the Association]'s direct and patent interest in the operations of the Group.

[Id. at 467-68.]

The Restatement (Third) of the Law Governing Lawyers § 76(1) (2000) (Restatement) recognizes that the exchange of confidential information between or among two or more clients with a common interest in a litigated or non-litigated matter, who are represented by different attorneys, preserves the privilege against third parties. The rule "permits persons who have common interests to coordinate their positions without destroying the privileged status of their communications with their lawyers." Id. at § 76(1) cmt. b. In doing so,

the common-interest privilege somewhat relaxes the requirement of confidentiality . . . by defining a widened circle of persons to whom clients may disclose privileged communications. . . . [Privileged] communications of several commonly interested clients remain confidential against the rest of the world, no matter how many clients are involved. However, the known presence of a stranger negates the privilege for communications made in the stranger's presence.

[Id. at § 76(1) cmt. c.]

19

According to the Restatement, supra, the permissible extent of common interest disclosures is not unlimited. Direct communications of privileged information between or among the clients will not retain their privileged character unless made for the purpose of communication with a privileged person, and the communication must relate to the common interest which may be legal, factual, or strategic. Id. at § 76(1) cmts. d. and e. On the other hand, "[t]he interests of the separately represented clients need not be entirely congruent." Id. at § 76(1) cmt. e.

The application of the common interest rule in the context of the attorney-client privilege in SCI is consistent with the Restatement rule. To be sure, disclosure of the report prepared by the Association to its insurance group trustees widened the circle to whom privileged communications may be made. However, the Association trustees and the insurance group trustees had a common interest in identifying any mismanagement in the insurance program and rectifying any problems.

B.

Documents that satisfy the OPRA definition of government record are not subject to public access if they fall within the work-product doctrine. Sussex Commons, supra, 210 N.J. at 542; K.L., supra, 423 N.J. Super. at 352-53; Gannett, supra, 379 N.J.

20

Super. at 218-19. This doctrine was first recognized in Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947). In Hickman, the owners and underwriters of a tug boat hired a law firm to defend against potential litigation after the boat sank and five crewmembers drowned. Id. at 498, 67 S. Ct. at 387, 91 L. Ed. at 455. One of the retained lawyers interviewed survivors and prepared a report based on his notes of the interviews. Id. at 498-99, 67 S. Ct. at 387-88, 91 L. Ed. at 455-56. The Court protected those documents from discovery, concluding that such materials "fall[] outside the arena of discovery and contravene[] the public policy underlying the orderly prosecution and defense of legal claims." Id. at 510, 67 S. Ct. at 393, 91 L. Ed. at 462.

In justifying the work-product doctrine, the Court recognized the need for lawyers to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Ibid. The Court expressed its concern that without adequate protection of the product of an attorney's work, justice and clients' best interests would be undermined. Id. at 511, 67 S. Ct. at 393, 91 L. Ed. at 462. Accordingly, although the Court acknowledged the importance of discovery of non-privileged documents to achieve a court's truth-seeking function, it determined that "the general policy against invading the privacy of an attorney's course of preparation" is

so important "that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production." Id. at 512, 67 S. Ct. at 393, 91 L. Ed. at 462.

New Jersey first codified the work-product doctrine in 1948. R. 3:26-2. The rule was considered broader than the rule recognized in Hickman. Crisafulli v. Pub. Serv. Coordinated Transp., 7 N.J. Super. 521, 523 (Cty. Ct. 1950); Note, Discovery: New Jersey Work Product Doctrine, 1 Rutgers L.J. 346, 348-49 (1969).

Today, the work-product doctrine is codified in Rule 4:10-2. It provides that

> [a] party may obtain discovery of documents, electronically stored information, and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation.
>
> [R. 4:10-2(c).]

In most instances, disclosure by an attorney of his or her work product to a third party functions as a waiver of the protection accorded to an attorney's work product. N.J.S.A. 2A:84A-29; N.J.R.E. 530. However, there are circumstances when disclosure of work product to a third party is entirely consistent with the confidentiality that is accorded to work product and does not waive the protection afforded to it. Disclosure consistent with the common interest rule is one of those circumstances.

In LaPorta, supra, the Appellate Division applied the common interest rule in a work-product context. 340 N.J. Super. at 262. The issue arose in a wrongful termination action filed by a county employee when his public employer refused to reinstate him following his acquittal of federal criminal charges not related to his public employment. Id. at 257-58. At the conclusion of the federal criminal proceedings, material was remitted to the county counsel, who commenced an additional investigation of LaPorta's activities as a public employee. Ibid. County counsel, in turn, prepared certain documents and submitted them to the county prosecutor. Id. at 258. No criminal charges ensued from this investigation. Ibid. LaPorta, however, subpoenaed documents in the possession of the county prosecutor in the course of his civil litigation against the county. Ibid.

The Appellate Division held that a memo prepared by the county counsel about his investigation, a memo from the person holding LaPorta's position on a temporary basis to the county counsel in response to an inquiry from him, and a lengthy statement given by the county counsel to the county prosecutor were county counsel's work product and that the county counsel did not waive the privilege afforded by the work-product doctrine when he shared those documents with the county prosecutor. Id. at 259. In reaching this result, the appellate panel concluded that

> [t]he common interest exception may be asserted with respect to communications among counsel for different parties if "(1) the disclosure is made due to actual or anticipated litigation; (2) for the purposes of furthering a common interest; and (3) the disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse parties." Holland v. Island Creek Corp., 885 F. Supp. 4, 6 (D.D.C. 1995); see also In re Bevill, Bresler & Shulman, 805 F.2d 120, 126 (3d Cir. 1986). It is not necessary for actual litigation to have commenced at the time of the transmittal of information for the privilege to be applicable. U.S. v. Schwimmer, 892 F.2d 237, 244 (2d Cir. 1989), cert. denied, 502 U.S. 810, 112 S. Ct. 55, 116 L. Ed. 2d 31 (1991). Indeed, communications need not only be among counsel for the clients. Communications between counsel for a party and an individual representative of a party with a common interest are also protected. Ibid.
>
> [Id. at 262.]

24

The panel also emphasized that it is not necessary for the interest of every party to be identical. Ibid. Instead, the focus is whether the parties have a common purpose. Ibid.

Application of those principles led to the conclusion that the documents sought by LaPorta were not subject to production. Id. at 263. The Appellate Division reasoned that the county counsel, as the representative of the public employer, and the county prosecutor shared a common purpose of barring LaPorta's reinstatement to public employment because of his perceived illegal conduct while performing his public duties. Ibid. Furthermore, whether the parties who share otherwise privileged communications share a common purpose is measured at the time the protected documents or communications are disclosed. Ibid. It is of no moment that the cooperation between the county counsel and county prosecutor did not yield criminal charges. Ibid.

C.

Although the common interest rule is firmly rooted in the attorney-client privilege, Schwimmer, supra, 892 F.2d at 244, disclosure of work product to third parties with a common interest may not destroy the privileged character of the work product. New Jersey applies the common interest doctrine in the context of sharing confidential communications between an attorney and client with third parties and in the context of

25

sharing work product with third parties.  The test articulated in LaPorta applies in both contexts.

Most jurisdictions that recognize the common interest rule,[3] as well as the Restatement, recognize a wider set of circumstances in which disclosure of work product to a third party, including those with a common interest, will preserve the protection afforded to work product than when the disclosure to a third party involves confidential communications protected by the attorney-client privilege.  In United States v. Massachusetts Institute of Technology (MIT), 129 F.3d 681, 687 (1st Cir. 1997), the Court of Appeals observed that disclosure "outside the magic circle" invariably leads to the conclusion that the attorney-client privilege has been waived.  By contrast, the work-product privilege or protection is not so easily waived and the prevailing view seems to extend only to adversaries, "so only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection."  Ibid.; accord Restatement, supra, § 91(4).  Thus, the inquiry considers whether the disclosed material reached an adversary or whether the disclosure to the third party made it

---

[3] Far less than a majority of state and federal courts have affirmatively adopted the common interest rule and those that have done so have not applied it uniformly.  See Katharine Traylor Schaffzin, An Uncertain Privilege: Why the Common Interest Doctrine Does Not Work and How Uniformity Can Fix It, 15 B.U. Pub. Int. L.J. 49, 52-53 (2005).

26

substantially likely that the protected material would reach an adversary. The inquiry invariably devolves to an examination of the nature of the disclosure itself. See, e.g., In re Chevron Corp., 633 F.3d 153, 165 (3d Cir. 2011).

In Chevron Corp., an expert retained by the plaintiffs in environmental damages litigation supplied reports, evaluations, and assessments to a court-appointed global damages expert to support their claims of environmental damages caused by the defendant. Id. at 158. The court-appointed expert utilized some of those documents in his assessment and attached relevant documents supplied by the plaintiffs' expert. Id. at 159. The plaintiffs asserted that the documents were protected by the work-product privilege. Id. at 164. In assessing this claim, the Court of Appeals emphasized that "the purpose behind the work-product doctrine requires [a court] to distinguish between disclosures to adversaries and disclosures to non-adversaries, and it is only in cases in which the material is disclosed in a manner inconsistent with keeping it from an adversary that the work-product doctrine is waived." Id. at 165 (internal quotation and citation omitted). The Court of Appeals concluded that the submission of the documents by the plaintiffs to the court-appointed expert occurred in a manner inconsistent with withholding those documents from their adversary because the plaintiffs' submission was designed to influence and convince

27

not only the court-appointed expert but also the defendants of the merits of its position.  Ibid.; see also MIT, supra, 129 F.3d at 687 (holding prior disclosure to defense audit agency of same information sought by IRS subpoena forfeited work-product protection); Westinghouse Elec. Corp. v. Republic of Phil., 951 F.2d 1414, 1428 (3d Cir. 1991) (recognizing that disclosure to third party does not necessarily void work-product protection unless disclosure enables access by adversary); In re Doe, 662 F.2d 1073, 1081 (4th Cir. 1981), cert. denied, 455 U.S. 1000, 102 S. Ct. 1632, 71 L. Ed. 2d 867 (1982) (contrasting disclosure of fact or opinion work product to third parties with common interest and free and voluntary disclosure to third party, including adversary, demonstrating conscious disregard of confidentiality provided by work-product doctrine).

D.

The scope or extent of common interests is the subject of considerable debate.  The positions of the parties and amici reflect this debate.  In New Jersey, it is not necessary that every party share identical interests.  LaPorta, supra, 340 N.J. Super. at 262.  It is also not necessary for actual litigation to have commenced.  Ibid.  It is sufficient that litigation is contemplated.  Ibid.  The common interest may arise in the context of civil or criminal proceedings.  Ibid. (citing In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129, 902 F.2d

28

244, 249 (4th Cir. 1990)); SCI, supra, 226 N.J. Super. at 466. Furthermore, the communication need not be confined to counsel. Communications between counsel for a party and a representative of another party with a common interest are also protected. LaPorta, supra, 340 N.J. Super. at 262.

The Restatement, supra, § 76 comment e, addressing the common interest rule in the context of the attorney-client privilege, states that "the common interest . . . may be legal, factual, or strategic in character," and "[t]he interests of the separately represented clients need not be entirely congruent." See also Restatement, supra, § 91 cmt. b. (addressing common interest rule in context of work-product doctrine).

Outside of New Jersey, however, courts vary in their analyses of the common interest rule, resulting in less certainty concerning its application. Schaffzin, supra, 15 B.U. Pub. Int. L.J. at 65. Some jurisdictions require that the interests of the parties be completely congruent in order for a common legal interest to exist. See SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 513 (D. Conn.) ("That . . . both parties' interests converged does not lessen the significance of their divergent interests. Their interests regarding antitrust considerations were not sufficiently common to justify extending the protection of the attorney-client privilege to their discussion."), appeal dismissed, 534 F.2d 1031 (2d Cir. 1976);

29

Niagara Mohawk Power Corp. v. Megan-Racine Assocs., Inc. (In re Megan-Racine Assocs.), 189 B.R. 562, 573 (Bankr. N.D.N.Y. 1995) ("A common legal interest exists where the parties asserting the privilege were co-parties to litigation or reasonably believed that they could be made a party to litigation."). Others have stated that it is necessary that every party share identical interests. United States ex rel. [Redacted] v. [Redacted], 209 F.R.D. 475, 479 (D. Utah 2001) ("A community of interest exists where different persons or entities have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice."); Duplan Corp. v. Deering Milliken, Inc., 397 F. Supp. 1146, 1172 (D.S.C. 1974) ("The key consideration is that the nature of the interest be identical, not similar."). Additionally, some jurisdictions stress that no commonality of legal interest exists if there is no threat of actual litigation, resting the analysis on this aspect rather than on the uniformity of interests. See In re Megan-Racine Assocs., supra, 189 B.R. at 573 (finding legal interest only where pending or reasonably anticipated litigation exists).

Other jurisdictions disagree whether the common interest doctrine can protect client-to-client communications. Compare United States v. Gotti, 771 F. Supp. 535, 545 (E.D.N.Y. 1991) (finding extension of application of joint defense privilege to

conversation among defendants in absence of attorney "is supported neither in law nor in logic and is rejected"), with Hunydee v. United States, 355 F.2d 183, 185 (9th Cir. 1965) ("[W]here two or more persons who are subject to possible indictment in connection with the same transactions make confidential statements to their attorneys, these statements, even though they are exchanged between attorneys, should be privileged to the extent that they concern common issues and are intended to facilitate representation in possible subsequent proceedings."), and In re Grand Jury Subpoena Duces Tecum Dated Nov. 16, 1974, 406 F. Supp. 381, 388 (S.D.N.Y. 1975) ("Thus, the Hunydee opinion -- specifically addressed to a joint conference situation -- confirmed that the 'exchange between attorneys,' . . . might equally be effected through the clients' direct communication as well as through the attorneys' reciprocal transfer of documents recording such communications."). These numerous differences among jurisdictions reflect the lack of uniformity concerning the scope of the common interest doctrine.

Professor Schaffzin has suggested a uniform rule to alleviate uncertainty. Schaffzin, supra, 15 B.U. Pub. Int. L.J. at 86-90. She suggests that the shared common interest should be "a legal, rather than a purely commercial interest," id. at 72, and further advocates that a uniform common interest rule should require "that the parties' shared legal interest be

31

common but not necessarily identical," id. at 73.  Such a rule would focus a court's consideration of whether parties share a common legal interest "on the nature of the communication and the general purpose for which it is shared, rather than on the relationship of the parties."  Ibid.  Finally, because the common interest rule derives from the attorney-client privilege, it is of no matter whether the disclosure occurs in anticipation of litigation or in the course of litigation.  Id. at 76.

E.

Access to public documents may also be procured in accordance with the common law right of access.  The right is broader than OPRA because it encompasses a more expansive class of documents.  Educ. Law Ctr. v. N.J. Dep't of Educ., 198 N.J. 274, 302 (2009).  Unlike OPRA, a person seeking public documents pursuant to the common law right of access "'must be balanced against the State's interest in preventing disclosure.'"  Ibid. (quoting Higg-A-Rella, Inc. v. Cnty. of Essex, 141 N.J. 35, 46 (1995)).  In other words, the party requesting documents must explain why he seeks access to the requested documents.

In order to determine whether the common law right of access applies to a particular set of records, a court must follow a three-step test.  First, it must determine whether the documents in question are "public records."  Atl. City Convention Ctr. Auth. v. S. Jersey Publ'g Co., 135 N.J. 53, 59

32

(1994).  Second, the party seeking disclosure must show that he has an interest in the public record.  Educ. Law Ctr., supra, 198 N.J. at 302.  More specifically, if the plaintiff is seeking "disclosure of privileged records," such as those protected by the work-product doctrine, he must show "particularized need." Wilson v. Brown, 404 N.J. Super. 557, 583 (App. Div.) (citing McClain v. Coll. Hosp., 99 N.J. 346, 351 (1985)), certif. denied, 198 N.J. 473 (2009).  In McClain, supra, this Court set forth a three-part test for determining whether a party has articulated a particularized need: "1) the extent to which the information may be available from other sources, 2) the degree of harm the litigant will suffer from its unavailability, and 3) the possible prejudice to the agency's investigation."  99 N.J. at 351.  Third, once the plaintiff's interest in the public record has been established, the burden shifts to the public entity to establish that its need for non-disclosure outweighs the plaintiff's need for disclosure.  Educ. Law Ctr., supra, 198 N.J. at 303.

IV.

A.

As related in this opinion, there is considerable debate among the various jurisdictions, state and federal, regarding whether the common interest rule should be adopted, and, if so, on what terms.  New Jersey recognizes the common interest rule

33

but some counsel urge that our application of the rule has either strayed from its roots in the attorney-client privilege or is too narrowly restricted to disclosures made during litigation or in anticipation of litigation. Others contend the common interest rule articulated in LaPorta is too broad. All agree, however, that the common interest rule does not create a new privilege. Rather, it permits disclosure of privileged material, attorney-client confidential communications or work product, to third parties without waiving any privilege as long as the applicable features of the common interest rule in the jurisdiction are satisfied.

Those that disagree with the LaPorta rule urge that the Court take this opportunity to modify the current rule. We decline to do so. The common interest rule is designed to permit the free flow of information between or among counsel who represent clients with a commonality of purpose. It offers all parties to the exchange the real possibility for better representation by making more information available to craft a position and inform decision-making in anticipation of or in the course of litigation. In re Grand Jury Subpoenas, supra, 902 F.2d at 249. We acknowledge, however, that how far beyond "the magic circle" privileged material may be shared depends on whether the disclosed material is protected by the attorney-client privilege or the work-product doctrine. Thus, as

34

recognized in the Restatement, sharing of privileged information of several, even many, commonly interested clients will remain inviolate as long as a stranger does not intrude. Restatement, supra, § 76(1) cmt. c. In other words, the actions of the commonly interested clients and their attorneys must reflect the privileged status of the communications, including taking measures to prevent disclosure to an adversary. Compare MIT, supra, 129 F.3d at 687 (finding that disclosure of billing statements and corporate minutes containing privileged communications to audit agency constituted disclosure to potential adversary), and Westinghouse, supra, 951 F.2d at 1429 (holding that target of investigations which discloses work product to investigatory agencies waived work-product protection against all adversaries), with United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1300 (D.C. Cir. 1980) (holding party assisting Department of Justice investigation of another not an adversary of agency).

We recognize, however, that any privilege, including the attorney-client privilege or the protection afforded to work product, restricts the disclosure of information, even highly relevant information, and may intrude on the fact-finding function of litigation. Kociolek, supra, 23 N.J. at 414-15. Yet, those concerns do not warrant adoption of the most conservative formulations of the common interest rule, such as

requiring that the interests of the parties be completely congruent or identical, SCM Corp., supra, 70 F.R.D. at 513, or requiring a threat of actual litigation, see In re Megan-Racine Assocs., supra, 189 B.R. at 573, or requiring that the common interest be legal rather than purely commercial, see Schaffzin, supra, 15 B.U. Pub. Int. L.J. at 72. Rather, we conclude that the rule recognized in LaPorta strikes an acceptable balance of these competing interests.

We, therefore, expressly adopt the common interest rule as articulated in LaPorta. The common interest exception to waiver of confidential attorney-client communications or work product due to disclosure to third parties applies to communications between attorneys for different parties if the disclosure is made due to actual or anticipated litigation for the purpose of furthering a common interest, and the disclosure is made in a manner to preserve the confidentiality of the disclosed material and to prevent disclosure to adverse parties. LaPorta, supra, 340 N.J. Super. at 262. The disclosure may occur prior to the commencement of litigation. Ibid. Communications between counsel for one party and a representative of another party with a common interest will preserve the privileged nature of the disclosed information. Ibid. Moreover, the common interest need not be identical; a common purpose will suffice. Ibid.

Common purpose extends to sharing of trial preparation efforts between attorneys against a common adversary. The attorneys need not be involved in the same litigated matter or anticipated matter. Am. Tel. & Tel. Co., supra, 642 F.2d at 1299. Moreover, the rule should be broad enough to encompass the situation in which certain disclosures of privileged material are made to another attorney who shares a common purpose, for the limited purpose of considering whether he and his client should participate in a common interest arrangement.

Applying these principles to this appeal, we conclude that the interests of Longport and Sufrin's clients, a former municipal official and municipal residents, were not identical but clearly shared a common purpose. Sufrin was attempting to defend a civil action commenced by O'Boyle arising out of one client's official position and others' participation in civic affairs. Longport had defended many civil actions filed against it by O'Boyle and anticipated further litigation from O'Boyle. Both Sufrin and Longport had a common purpose to repel further legal challenges from a citizen who did not agree with the manner in which elected and appointed officials discharged their public duties. It is of no consequence that the private attorney and the municipal attorney did not jointly defend the pending litigation. The focus must be whether the private attorney and the municipal attorney shared a common purpose at

37

the time the private attorney shared his work product with the municipal attorney.

Furthermore, the private attorney's work product was disclosed in a manner calculated to preserve its confidentiality. There is no evidence that the municipal attorney shared the material with anyone else, including O'Boyle. Indeed, once the municipal attorney declined to enter a joint or common defense strategy with Sufrin, he returned the privileged material, thereby minimizing even an inadvertent disclosure to O'Boyle. In sum, the joint strategy memorandum, the CDs containing documents prepared or obtained by Sufrin, and the associated correspondence were attorney work product. Disclosure of this material to the municipal attorney did not destroy the protected character of this material because at the time of the disclosure, Sufrin and the municipal attorney shared a common purpose to defend their public and private clients from pending and anticipated litigation filed by O'Boyle. Therefore, Longport and the Borough Clerk properly withheld the contested six categories of documents.

B.

We need not determine whether the material provided to the municipal attorney became a public record in accordance with the common law upon receipt from the private attorney. The common law right of access recognizes privileges, such as the attorney-

38

client privilege, although the privilege may be overcome by a showing of particularized need. Here, O'Boyle articulated the interest he had in the material supplied by Sufrin to the municipal attorney but failed to express a particularized need for the documents. Having failed to demonstrate a particularized need for the privileged material supplied to the municipal attorney, O'Boyle failed to satisfy the common law standard for access to those documents.

## V.

In conclusion, we expressly adopt the common interest rule as previously articulated in LaPorta, supra, 340 N.J. Super. at 254, 262-63. We also hold that Sufrin, who represented a former municipal official and private residents in litigation filed by O'Boyle, shared a common purpose with Longport at the time he disclosed work product to the municipal attorney. Therefore, the joint strategy memorandum, and the CDs containing documents obtained and produced by the private attorney were not government records subject to production in response to an OPRA request by O'Boyle. Finally, O'Boyle failed to articulate a particularized need as required by the common law right of access to obtain the work product of the private attorney.

## VI.

The judgment of the Appellate Division is, therefore, affirmed.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA and ALBIN; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUDGE CUFF's (temporarily assigned) opinion.  JUSTICE PATTERSON did not participate.

SUPREME COURT OF NEW JERSEY

NO.    A-16                        SEPTEMBER TERM 2012

ON CERTIFICATION TO _____ Appellate Division, Superior Court _____

MARTIN E. O'BOYLE,

    Plaintiff-Appellant,

          v.

BOROUGH OF LONGPORT, and
THOMAS HILTNER in his
capacity as Borough of
Longport Clerk and Custodian
of Records,

    Defendants-Respondents.



DECIDED         July 21, 2014
_____
          Chief Justice Rabner            PRESIDING
_____
OPINION BY _____ Judge Cuff (temporarily assigned) _____
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | -------------------- | -------------------- |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 5 | |