**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3097-17T2

PETER F. DIPAOLO,

     Plaintiff,

v.

NEW JERSEY PHYSICIANS
UNITED RECIPROCAL EXCHANGE,
a New Jersey reciprocal exchange,

     Defendant-Respondent,

 and

CRYSTAL EVANS,

     Intervenor-Appellant.

_____

Argued September 26, 2018 – Decided October 26, 2018

Before Judges Ostrer and Currier.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1580-13.

William D. Levinson argued the cause for appellant (Martin Kane & Kuper, attorneys; James D. Martin, of counsel; William D. Levinson, on the briefs).

Anthony Argiropoulos argued the cause for respondent (Epstein Becker & Green, PC, attorneys; Anthony Argiropoulos and William Gibson, on the brief).

PER CURIAM

In this bad faith action, plaintiff Peter F. DiPaolo, M.D. sued his medical malpractice insurer, defendant New Jersey Physicians United Reciprocal Exchange (NJ PURE), alleging it did not make a good faith effort to settle the underlying medical malpractice suit within the policy limits. Crystal Evans, the plaintiff in the underlying malpractice case, received a substantial jury verdict that was subsequently reduced to a judgment against DiPaolo. She intervened in the bad faith action.

NJ PURE served a subpoena duces tecum on Evans's counsel, seeking communications and documents made by and exchanged between Evans's counsel and DiPaolo's counsel after the verdict in the underlying case. Both counsel claimed the common interest privilege barred the production of any communications and documents. The trial judge disagreed and ordered counsel to produce the requested communications and documents. Because Evans and DiPaolo share a common interest in recouping the judgment from NJ PURE, the

requested material is privileged, and we, therefore, reverse the September 18, 2017 trial court order.

After a jury awarded Evans $3,801,200[1] for injuries sustained as a result of DiPaolo's deviation from the applicable medical standard of care, a judgment was entered against him totaling $5,256,767.72. Following an unsuccessful appeal, NJ PURE paid the $1,000,000 medical malpractice insurance policy covering DiPaolo. A judgment of $4,800,000[2] remained in place against DiPaolo.

As a result, DiPaolo brought this action, contending NJ PURE did not make a good faith effort to settle the medical malpractice case within his policy limits, resulting in the substantial judgment against him. He asserts NJ PURE is responsible for the judgment. As intervenor, Evans also seeks a determination that NJ PURE is obligated to pay the entire outstanding judgment against DiPaolo.

---

[1] The total verdict was $5,590,000. The jury allocated 68% of the fault to DiPaolo.

[2] The judgment includes the accrued interest.

During discovery, NJ PURE served a subpoena duces tecum on Evans's trial counsel and his law firm.[3] The subpoena sought:

> 1. All documents or communications, including records of any telephone communications, between [trial counsel] and [DiPaolo's counsel] relating to or concerning the Underlying Action.

> 2. All documents or communications, including records of any telephone communications, between [trial counsel] and [DiPaolo's counsel] relating to or concerning This Action.

> 3. All documents or communications, including records of any telephone communications, between [trial counsel] and [DiPaolo's counsel] concerning or relating to settlement in the Underlying Action.

Evans objected to the subpoena, alleging that under the common interest doctrine, any communications and documents between counsel, that occurred after the jury's verdict, were privileged. The parties agreed that the privilege was waived for any communication or documents before the verdict.[4]

During oral argument of NJ PURE's motion to compel production of the requested subpoenaed items, Evans's counsel argued that Evans and DiPaolo had

---

[3] In the same order under review here, Evans's trial counsel was disqualified from representing her in the bad faith action because of the likelihood he would be a material witness. There was no appeal from that part of the order.

[4] Different counsel represented DiPaolo during the underlying medical malpractice trial.

a common purpose in this action: each sought to prove the bad faith of NJ PURE and collect the judgment. The attorneys had collaborated in their common interest by communicating about strategy, settlement possibilities, and the scope of questioning of the defense witnesses. Counsel cited to O'Boyle v. Borough of Longport[5] to support his assertion of the common interest privilege.

In granting NJ PURE's motion, the trial judge stated that he did not see a common interest. He found O'Boyle inapplicable because there was no "economic commonality" between the parties. We granted leave to appeal from the court's order.[6]

We review the applicability of an evidentiary privilege de novo. See Paff v. Div. of Law, 412 N.J. Super. 140, 149 (App. Div. 2010); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

Under our broad discovery rules, a party is generally permitted to obtain any materials that are relevant to the subject matter of the action, so long as the

---

[5] 218 N.J. 168 (2014).

[6] Subsequent to our order, DiPaolo assigned Evans all of his causes of action and rights to any recovery against NJ PURE.

materials are not privileged.  R. 4:10–2(a).  Here, Evans asserts the attorney-client privilege bars the production of any communication and documents exchanged between her counsel and DiPaolo's attorney.  We agree.

The attorney-client privilege protects communications between a client and his or her attorney.  N.J.S.A. 2A:84A–20; N.J.R.E. 504.  Communications are privileged if they take place in the course of a professional relationship and are intended to be confidential.  Coyle v. Estate of Simon, 247 N.J. Super. 277, 281-82 (App. Div. 1991).  Ordinarily, the attorney-client privilege is waived when confidential communications are revealed to a third party.  O'Boyle, 218 N.J. at 186 (citations omitted).

However, not every disclosure serves to waive the privilege.  Rather, "courts have interpreted [the waiver] principle in a commonsensical way, fashioning a 'common interest' doctrine which protects communications made to a non-party who shares the client's interests."  Laporta v. Gloucester Cty. Bd. of Chosen Freeholders, 340 N.J. Super. 254, 261 (App. Div. 2001) (quoting In re State Com'n of Investigation, 226 N.J. Super. 461, 466 (App. Div. 1988)).  The common interest doctrine permits "the free flow of information between or among counsel who represent clients with a commonality of purpose," and "offers all parties to the exchange the real possibility for better representation

A-3097-17T2

by making more information available to craft a position and inform decision-making in anticipation of or in the course of litigation." O'Boyle, 218 N.J. at 197 (citing In re Grand Jury Subpoenas, 902 F.2d 244, 249 (4th Cir. 1990)).

In adopting the common interest doctrine expressed in LaPorta, the O'Boyle Court articulated its requirements: (1) the parties must share a common purpose, though it is not necessary for their interests to be identical: (2) it is "not necessary for actual litigation to have [been] commenced"; (3) the common interest may arise during civil proceedings; and (4) there is no requirement for "the common interest [to] be legal rather than purely commercial." 218 N.J. at 193-94, 198 (citing LaPorta, 340 N.J. Super. at 262).

Evans and DiPaolo assert that the common interest doctrine protects their post-verdict communications and documents. They contend they have economic interests that are in "perfect alignment [as] [Evans] seeks to collect the excess verdict and [DiPaolo] seeks to have [NJ PURE] pay the excess verdict." In contrast, NJ PURE posits there is no common interest because Evans had no claims asserted against NJ PURE prior to the assignment of rights from DiPaolo; instead, Evans has a debtor-creditor relationship with DiPaolo.

A review of the record reveals that the O'Boyle test has been satisfied and that a common interest exists between Evans and DiPaolo that prevents the

A-3097-17T2

disclosure of their respective counsels' communications and documents. The communications were made in the course of anticipated and actual litigation and Evans and DiPaolo share the common purpose of seeking an order for NJ PURE to pay the outstanding judgment. The disclosures were intended to be confidential and were not made to a third party "in a way inconsistent with keeping it from an adversary." O'Boyle, 219 N.J. at 192.

We are not persuaded by NJ PURE's argument that even if the common interest doctrine applies, the attorney-client privilege can be pierced under In re Kozlov, 79 N.J. 232, 243-44 (1979). In certain limited circumstances, to pierce a privilege: (1) there must be "a legitimate need . . . to reach the evidence sought to be shielded;" (2) the evidence must be relevant and material to an issue in the case; and (3) there must be a finding, by a fair preponderance of the evidence, that the information sought cannot be obtained from a less intrusive source. Ibid.

Here, NJ PURE has not demonstrated the required need for the communications and documents. The issue in the bad faith action is whether Evans and DiPaolo could have achieved a settlement prior to the verdict. All parties have agreed that any communication and documents relating to pre-verdict discussions are not privileged and they have produced those materials. As a result, NJ PURE is unable to meet the strict Kozlov requirements. See

8

State v. Mauti, 208 N.J. 519, 537 (2012) (holding Kozlov did not create a "broad equitable balancing test pursuant to which any privilege is subject to piercing if the adversary 'needs' relevant evidence that cannot be obtained from another source.").

Lastly, we reject NJ PURE's argument that counsel for Evans and DiPaolo waived the attorney-client privilege when they placed their communications with each other "at issue" in bringing the bad faith litigation. NJ PURE would be correct if it sought the communications between counsel in the underlying medical malpractice case. Those communications are at issue in this suit and therefore not privileged. Here, however, NJ PURE seeks access to the communications between counsel in this litigation. As explained, such communications are privileged.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3097-17T2