**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3567-22

AAKASH DALAL,

    Plaintiff-Appellant,

v.

HUDSON COUNTY
PROSECUTOR'S OFFICE,

    Defendant-Respondent.

_____

           Argued October 1, 2024 – Decided November 27, 2024

           Before Judges Gilson, Bishop-Thompson, and Augostini.

           On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3384-21.

           Aakash Dalal, appellant pro se.

           Cindy Nan Vogelman argued the cause for respondent (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; Cindy Nan Vogelman, on the brief).

PER CURIAM

This appeal presents the question of whether a citizen is entitled to obtain copies of documents prepared or received by a county prosecutor's office in connection with the prosecutor's investigation of potential criminal charges. Plaintiff Aakash Dalal appeals from a July 5, 2023 order granting summary judgment to defendant the Hudson County Prosecutor's Office (the HCPO) and dismissing with prejudice Dalal's complaint, which asserted a violation of the common law right of access to public records. Dalal also appeals from two orders entered on January 17, 2023, which granted the HCPO's motion to quash Dalal's subpoena, granted the HCPO a protective order, and denied Dalal's motion to compel discovery.

Applying the common-law balancing test, we hold that Dalal was not entitled to access the requested documents. Accordingly, we affirm the order granting summary judgment to the HCPO, albeit for reasons different from the trial court. We also affirm the orders granting the HCPO's motion to quash a subpoena, granting the HCPO a protective order, and denying Dalal's request for discovery.

I.

There is a background history to Dalal's request for documents from the HCPO. In 2012, Dalal, together with a co-defendant, was charged with

numerous crimes related to the firebombing of four synagogues and a Jewish community center. During his criminal prosecution, former Judge Liliana DeAvila-Silebi (Silebi) presided over certain pretrial proceedings, including setting Dalal's initial bail.

While Dalal was in custody awaiting trial, an informant contacted federal authorities concerning threats Dalal had allegedly made against several public officials. See State v. Dalal, 221 N.J. 601, 603 (2015). In connection with the follow-up investigation, Dalal's jail cell was searched, and law enforcement officials found several handwritten documents. Ibid. One of the documents depicted a chart of Dalal's "ENEMIES" and listed Silebi as a "high profile" enemy. Id. at 603-04.

Dalal was eventually tried and convicted of numerous crimes, including first-degree terrorism, N.J.S.A. 2C:38-2(a); first-degree aggravated arson, N.J.S.A. 2C:17-1(a)(2) and N.J.S.A. 2C:2-6; first-degree conspiracy to commit arson, N.J.S.A. 2C:17-1 and N.J.S.A. 2C:5-2; and first-degree bias intimidation, N.J.S.A. 2C:16-1(a)(1) and N.J.S.A. 2C:2-6. State v. Dalal, 467 N.J. Super. 261, 267 (App. Div. 2021). He was sentenced to serve thirty-five years in prison, and he is currently serving that sentence. Id. at 268.

For reasons totally unrelated to Dalal's criminal case, in 2018, Silebi was removed from serving as a judge. Her removal related to actions she took in connection with a child custody dispute and "misusing her judicial office to advance the private interests of a litigant." In re DeAvila-Silebi, 235 N.J. 218, 219 (2018).

In October 2019, Dalal filed a citizen's complaint against Silebi in municipal court. His complaint charged Silebi with official misconduct, obstructing the administration of the law, false reporting to law enforcement, and fictitious reports to law enforcement. Subsequently, a municipal judge found probable cause to support the charges based on a certification Dalal had filed. Thereafter, the Division of Criminal Justice (DCJ) and the Office of the New Jersey Attorney General sent Dalal's criminal complaint against Silebi to the HCPO for investigation. Ultimately, the HCPO decided not to prosecute the complaint, and, on the HCPO's application, the criminal complaint was dismissed.

In February 2020, Dalal submitted requests under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law right of access seeking records from the DCJ related to its investigation of his complaint against Silebi. Specifically, Dalal requested all emails and letters between

employees of the DCJ, the Bergen County Prosecutor's Office, and the HCPO concerning his citizen's complaint against Silebi.

The DCJ denied Dalal's requests asserting that the documents were protected from disclosure under OPRA because they were inter-agency or intra-agency advisory, consultative, and deliberative materials. Dalal challenged that decision by filing a complaint with the Government Records Council (the GRC). Ultimately, the GRC affirmed the DCJ's denial of Dalal's requests, finding that the requested documents were exempt under OPRA.

Additionally, in October 2020, Dalal submitted requests under OPRA and the common law right of access to the HCPO, requesting the same records he had requested from the DCJ. In response, the HCPO provided Dalal with a copy of his citizen's complaint against Silebi and stated that it had no other records that were responsive to his request. Thereafter, Dalal requested the HCPO to reconsider its denial and he submitted a second request for documents under OPRA and the common law right of access. Both the request for reconsideration and the second request for documents were denied by the HCPO.

In August 2021, Dalal filed a complaint against the HCPO alleging that its denial of the request for documents violated OPRA and the common law right of access. In response, the HCPO moved to dismiss, representing that it had no

other documents responsive to Dalal's request. Relying on the HCPO's representation that it had produced all responsive documents, the trial court dismissed Dalal's complaint without prejudice in an order entered on March 4, 2022.

Over a year later, in May 2022, Dalal moved to reinstitute his action against the HCPO and to file an amended complaint. Dalal contended that he had learned through the proceedings before the GRC that there were at least fifty-two pages of emails between the DCJ and the HCPO responsive to his requests. Accordingly, Dalal asserted that the HCPO had falsely represented that those documents did not exist, and he sought attorney's fees, the right to reinstitute his action, and the right to file an amended complaint.

The trial court denied Dalal's request for attorney's fees but allowed him to file an amended complaint against the HCPO. In that amended complaint, Dalal alleged violations of OPRA and the common law right of access.

Dalal then served interrogatories and document requests on the HCPO. He also served a subpoena on the DCJ. The HCPO responded by moving to quash the subpoena and for a protective order. The DCJ joined in supporting that motion. In response, Dalal moved to compel discovery.

On January 17, 2023, the trial court entered two orders:  (1) one granting the HCPO's motion to quash Dalal's subpoena and granting the HCPO a protective order; and (2) another denying Dalal's motion to compel discovery. In issuing those orders, the trial court reasoned that Dalal's discovery requests and subpoena were seeking the ultimate relief he was pursuing under OPRA and the common law right of access claims.  Thus, the trial court determined that it was inappropriate to compel discovery or allow the subpoena.

The following month, Dalal moved for summary judgment.  The HCPO opposed that motion and cross-moved for summary judgment.  The trial court heard arguments on those cross-motions on July 5, 2023.  During oral argument, Dalal limited his motion to the common law right of access and effectively acknowledged that he was not seeking the documents under OPRA.

On July 5, 2023, the trial court entered an order granting summary judgment in favor of the HCPO and explained the reasons for that order on the record.  In granting summary judgment, the court determined that the requested records were not public records under OPRA or the common law right of access. In that regard, the trial court explained:

> [T]he [c]ourt also shall not order defendant to disclose
> the requested records pursuant to the common law right
> to access because they are not common law public
> documents.  To succeed in this claim, [Dalal] must

demonstrate that the records he sought were common law public documents.

\*\*\*

Like the language in OPRA, the definition for criminal investigatory records and common law public documents is one that is required by law to [be] - - made, maintained or kept on file. However again, the [c]ourt could not find, nor did the parties find any law - - or case law that requires agency emails to be made, maintained, or kept on file. For this reason, the records sought by [Dalal] are not common law public documents.

Dalal now appeals from the two January 17, 2023 orders and the July 5, 2023 order granting summary judgment to the HCPO and dismissing his complaint with prejudice.

## II.

On appeal, Dalal makes three arguments. First, he contends that the trial court erred in determining that the requested criminal investigatory records were not public records under the common law right of access. He asserts that the trial court misinterpreted the common law right of access by transposing OPRA's exception for criminal investigatory records onto the definition of public records under the common law right of access.

Second, Dalal asserts that the trial court failed to engage in the proper balancing test under the common law right of access. He urges us to exercise

8

our original jurisdiction, apply the balancing test, and hold that he has the right of access to the requested records from the HCPO.

Third, and finally, Dalal argues that the trial court erred in denying his motion to compel discovery and in granting the motion to quash his subpoena. He contends that he demonstrated a "legitimate need" for discovery.

We hold that the trial court erred in its definition of what constitutes a public record under the common law right of access. Because both parties agree that the application of the balancing test involves no disputed issues of fact, we exercise our original jurisdiction and conduct the balancing test. Applying the balancing test, we hold that Dalal was not entitled to the criminal investigatory records he sought from the HCPO because he has a limited interest in their disclosure that is substantially outweighed by the HCPO's interest in maintaining confidentiality of criminal investigatory records. The HCPO's interest is particularly strong in cases, like here, where the prosecutor exercises his or her discretion not to bring criminal charges. In light of those rulings, we affirm all three orders challenged on this appeal.

A.    The Order Granting Summary Judgment.

Appellate courts review a grant of summary judgment de novo, "applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78

(2022). More particularly, appellate courts review a trial court's legal determinations regarding access to public records under the common law right of access de novo. ACLU of N.J. v. Cnty. Prosecutors Ass'n of N.J., 474 N.J. Super. 243, 268 (App. Div. 2022), aff'd, 257 N.J. 87 (2024).

This appeal is limited to Dalal's request for documents under the common law right of access. Although he asserted claims under OPRA in his complaint and amended complaint, Dalal abandoned his argument for obtaining the documents under OPRA before the trial court. Moreover, on this appeal Dalal has not presented any argument that he is entitled to the documents under OPRA. Accordingly, by not presenting those arguments, Dalal has effectively abandoned his claims under OPRA. W.H. Indus., Inc. v. Fundicao Balancins, Ltda, 397 N.J. Super. 455, 459 (App. Div. 2008) (finding that where a plaintiff fails to address an issue in his or her appellate brief, that issue is deemed waived). Indeed, the requested documents are criminal investigatory records and are exempt under OPRA. See N.J.S.A. 47:1A-1.1; Paff v. Ocean Cnty. Prosecutor's Off., 235 N.J. 1, 17-18 (2018) (explaining that OPRA defines a "criminal investigatory record" as "a record which is not required by law to be made, maintained or kept on file that is held by a law enforcement agency which pertains to any criminal investigation or related civil enforcement proceeding").

The common law right of access independently vests citizens with "an enforceable right to require custodians of public records to make them available for reasonable inspection and examination." ACLU of N.J., 474 N.J. Super. at 268 (quoting Irval Realty Inc. v. Bd. of Pub. Util. Comm'rs, 61 N.J. 366, 372 (1972)). To determine whether the common law right of access applies, a court must engage in a three-step analysis. O'Boyle v. Borough of Longport, 218 N.J. 168, 196 (2014). Under that analysis, the court (1) "must determine whether the documents in question are 'public records'"; (2) "the party seeking disclosure must show that he has an interest in the public record[s]"; and (3) "the public entity [must] establish that its need for non-disclosure outweighs the [requestor's] need for disclosure." Id. at 196-97 (quoting Atl. City Convention Crt. Auth. v. S. Jersey Publ'g Co., 135 N.J. 53, 59 (1994)).

"The definition of a public record under the common law is broader than under OPRA." Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 143 (2022) (citing Mason v. City of Hoboken, 196 N.J. 51, 67 (2008)). To qualify as a public record under the common law, "the document must be 'one that is made by a public official in the exercise of his or her public function, either because the record was required or directed by law to be made or kept, or because it was filed in a public office.'" ACLU of N.J., 474 N.J. Super. at 269

11

(quoting Keddie v. Rutgers, 148 N.J. 36, 49 (1997)).  Notably, the definition of a public record includes records made "either" because the record was required by law "or" because it was filed in a public office.  Ibid.

In this matter, the trial court granted summary judgment to the HCPO because it held that the requested documents were not public records.  That was a legal error.  The documents Dalal requested were made by public officials; that is, employees of the HCPO and the DCJ.  Those employees, moreover, were exercising their public function in investigating potential criminal charges when the emails were exchanged between their respective public offices.  Consequently, the documents Dalal sought were public records under the common law.  See Wilson v. Brown, 404 N.J. Super. 557, 581-82 (App. Div. 2009) (holding that emails between the governor, his staff, and president of a local union are public records under the common law).

B.    The Common Law Balancing Test.

Although the trial court did not apply the common law balancing test, we will exercise our original jurisdiction and apply the test.  See R. 2:10-5 (authorizing an "appellate court [to] exercise such original jurisdiction as is necessary to the complete determination of any matter on review").  In doing so, we are mindful that invoking original jurisdiction should be done "sparingly."

12

See Rivera, 250 N.J. at 146 (explaining that the "power [to exercise original jurisdiction] should be invoked 'sparingly' . . . and is generally used when the record is adequately developed and no further fact-finding is needed" (quoting State v. Jarbath, 114 N.J. 394, 412 (1989))).  Here, at oral argument, both Dalal and the HCPO agreed that there was no need for further fact findings and that if we did not agree with the trial court's determination, we should exercise our original jurisdiction and apply the balancing test.  Moreover, because disputes over the right to access documents under the common law may be handled in summary proceedings, we deem it appropriate to engage in the balancing test given this record.  See id. at 136 (directing the trial court to proceed expeditiously when completing the common law right of access balancing test); Tractenberg v. Twp. of W. Orange, 416 N.J. Super. 354, 362-365 (App. Div. 2010) (holding that the trial court properly conducted a summary proceeding to resolve a dispute under OPRA and the common law right of access); see Acting Admin. Off. of the Cts., Admin. Directive #21-17, Common Law Right of Access Requests for Dashcam Recordings of Fatal Police Shootings, at 2 (July 11, 2017) ("judges should handle actions involving access requests under the common law . . . as summary proceedings under Rule 4:67").

We, therefore, turn to the second and third parts of the analysis under the common law right of access test. That is, (2) whether Dalal has shown that he has an interest in the public records; and (3) whether the HCPO has established that its need for non-disclosure outweighs Dalal's need for disclosure. See O'Boyle, 218 N.J. at 196-97.

"The requisite interest necessary to accord a plaintiff standing to obtain copies of public records may be either a wholesome public interest or a legitimate private interest." Drinker Biddle & Reath, LLP v. N.J. Dep't of L. & Pub. Safety, 421 N.J. Super. 489, 499 (App. Div. 2011) (quoting Educ. L. Ctr. v. N.J. Dep't of Educ., 198 N.J. 274, 302 (2009)). The requestor's interest "need not be personal; thus, a citizen's concern about a public problem is a sufficient interest[.]" Id. at 499 (quoting Home News v. State, Dep't of Health, 144 N.J. 446, 454 (1996)).

Dalal does not have a private interest in the records he is requesting. His interest stems from a citizen's complaint he filed against Silebi in October 2019. He has made no showing that his interest in criminally prosecuting Silebi has any relationship to his criminal prosecution and convictions. So, at best, Dalal has a public interest in requesting the documents concerning the HCPO's criminal investigation of Silebi.

14

We, therefore, turn to the linchpin of the balancing test. That is, whether the HCPO has established that its need for non-disclosure outweighs Dalal's need for disclosure.

"Where 'reasons for maintaining a high degree of confidentiality in the public records are present, even when the citizen asserts a public interest in the information, more than [the] citizen's status and good faith are necessary to call for production of the documents.'" Id. at 500 (quoting S. N.J. Newspapers, Inc. v. Twp. of Mt. Laurel, 141 N.J. 56, 72 (1995)). In analyzing the parties' respective interests in disclosure and non-disclosure, courts balance six factors:

> (1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government;
>
> (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed;
>
> (3) the extent to which agency self-evaluation, program improvement, or other decisionmaking will be chilled by disclosure;
>
> (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers;
>
> (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and

15

(6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.

[Rivera, 250 N.J. at 144 (citing Loigman v. Kimmelman, 102 N.J. 98, 113 (1986)).]

Those factors, moreover, are not always a complete list of relevant considerations because "[t]hey largely examine only one side of the balancing test -- the need for confidentiality." Id. at 147. Consequently, "[t]he public interest in transparency may be heightened in certain situations[.]" Id. at 147-48. For example, in analyzing whether internal affairs reports concerning the former head of a police department should be disclosed under the common law, the New Jersey Supreme Court identified five other considerations, which include: "(1) the nature and seriousness of the misconduct . . . (2) whether the alleged misconduct was substantiated . . . (3) the nature of the discipline imposed . . . (4) the nature of the official's position . . . [and] (5) the individual's record of misconduct." Id. at 148.

Considering and balancing these factors, the parties' interests weigh in favor of non-disclosure. The HCPO is a government agency tasked with investigating, charging, and prosecuting individuals who are accused of committing crimes. Prosecutors' offices, like the HCPO, "retain[] broad discretion as to whom to prosecute and what charge[s] to bring." State v.

16

<u>Medina</u>, 349 N.J. Super. 108, 127 (App. Div. 2002). Engaging in a public examination of the discretion to prosecute, "'threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine' legitimate prosecutorial goals and objectives." <u>Id.</u> at 128 (citing <u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985)). In short, the HCPO has a strong interest in keeping their internal investigations of criminal matters confidential, particularly where they exercise discretion and decide not to prosecute.

Dalal focuses on the five <u>Rivera</u> factors and argues that they support disclosure. 250 N.J. at 144. Dalal, however, is not seeking an internal affairs investigation file. Instead, he initiated a criminal complaint against Silebi in municipal court. He seeks the HCPO's internal and confidential documents analyzing whether a criminal prosecution should be brought. Consequently, Dalal has misapplied the <u>Rivera</u> factors. For the <u>Rivera</u> factors to weigh in favor of disclosure, Dalal would have to present "more than generalized, conclusory statements" about the HCPO's alleged misconduct in their criminal investigation of Silebi. <u>See</u> <u>Rivera</u>, 250 N.J. at 149. While Dalal broadly asserts that the HCPO committed misconduct in deciding not to prosecute Silebi, he has failed to present any credible evidence to support that contention.

17

In that regard, the question of whether the HCPO possesses documents responsive to Dalal's request, beyond his criminal complaint, is immaterial. We assume that there are emails and internal documents, including emails exchanged with the DCJ. Those documents, however, are all confidential documents. Indeed, some of those documents probably constitute privileged work product or attorney communications.

In summary, having engaged in the balancing test under the common law, we hold that the documents requested were public documents, but that Dalal is not entitled to those documents because his general interest does not outweigh the HCPO's interest in maintaining the confidentiality of those documents. We, therefore, affirm the order granting summary judgment, albeit on alternative grounds.

C.    The Orders Denying Discovery and Quashing the Subpoena.

Trial courts' decisions on discovery matters are reviewed under an abuse of discretion standard. Capital Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017). Moreover, summary proceedings, like Dalal's action for access to documents, are "by definition, short, concise and immediate, and further, are 'designed to accomplish the salutary purpose of swiftly and effectively disposing of matters which lend themselves to summary treatment.'"

MAG Ent., LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 551 (App. Div. 2005) (quoting Depos v. Depos, 307 N.J. Super. 396, 399 (Ch. Div. 1997)). Therefore, absent legitimate need, discovery "is simply not suitable, and . . . is not permissible in actions, like OPRA proceedings, that are inherently summary by nature and expedited in manner." Id. at 552.

We agree with the trial court that Dalal's request for discovery and issuance of a subpoena were effectively trying to compel the HCPO to produce the documents he was seeking under the common law right of access. Having held that he was not entitled to those documents, we also hold that he was not entitled to discovery.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3567-22